## Alexander Sullivan v. The People of the State of Illinois.

1. CRIMINAL LAW—*When Record Shows Grand Jury to be Legally Chosen.*—The record sufficiently shows that the statute was complied with when it relates that the grand jury was called, impaneled and sworn, and a foreman appointed.

2. SAME—*Ordering a Bill of Particulars is Within the Discretion of the Court.*—If an indictment for conspiracy is in mere general terms, not charging overt acts, the course is to order a specification of the particulars; but, it being within the discretion of the court whether to grant it or not, its refusal can not be held reversible error.

3. SAME—*Acts of Persons Not Mentioned in the Indictment by Name as Conspirators, or Designated as Unknown, Can Not be Shown.*—A statement in the indictment, of the names of persons with whom the indicted defendants conspired, is descriptive of the offense, and such names must be stated, when known, and when unknown they may,

*ex necessitate,* be designated as persons to the grand jury unknown. The latter designation is so material that if, on the trial, it appears from the evidence that the person or persons so designated were known to the grand jury when the indictment was found, there can be no conviction. It follows that it is incompetent, on the trial, to prove, as against the defendants, the acts and declarations of a person not mentioned in the indictment by name as a conspirator, or designated therein as a person unknown to the grand jury.

4. SAME—*Evidence of Motive Competent in a Trial for Conspiracy.* —Evidence tending to prove motive is competent on an indictment for conspiracy.

5. EVIDENCE—*The Law Requires the Best Evidence.*—The contents of a writing can not be shown by parol, unless notice to produce it has been given and disregarded, or it has been lost or destroyed.

6. INSTRUCTIONS—*Giving of Very Numerous Instructions Should be Avoided.*—The giving of very numerous instructions, and repetitions of the same principles of law, should be avoided.

7. WITNESSES—*Credibility a Question for the Jury.*—The credibility of the witnesses and the weight to be given to the testimony of each, are questions for the jury.

8. APPELLATE COURT PRACTICE—*When Case Will Not Be Reversed Without Remanding.*—This court will not reverse a judgment without remanding on the ground that the verdict is not supported by the evidence.

**Indictment for Conspiracy.**—Error to the Criminal Court of Cook County; the Hon. ABNER SMITH, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed June 18, 1903. Rehearing denied July 9, 1903.

C. M. HARDY and ANDREW B. BOUGHAN, attorneys for plaintiff in error.

CHARLES S. DENEEN, state's attorney, and ALBERT C. BARNES, assistant state's attorney, attorneys for defendants in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Plaintiff in error was indicted for conspiracy, the jury found him guilty and fixed his punishment at a fine of $2,000, and judgment was rendered on the verdict, to reverse which a writ of error was sued out of this court. The indictment consists of five counts. The first count, omitting the formal commencement, is as follows :

"That on the thirtieth day of December, in the year of our

Lord one thousand eight hundred and ninety-eight, a cer-
tain grand jury of the said county of Cook, duly chosen,
selected and sworn for the December term, in the year of
our Lord one thousand eight hundred and ninety-eight, of
the Criminal Court of said Cook County, returned an indict-
ment in due form of law in open court in said Criminal Court
of said Cook County, against one James J. Lynch, on a certain
charge of unlawfully, feloniously, willfully and corruptly
corrupting a certain juror, to wit, Edward J. Powell, by
giving to said Edward J. Powell a certain gift and gratu-
ity, to wit, the sum of one hundred and fifty dollars in
money, with intent to bias the opinion and to influence the
decision of Edward J. Powell, as such juror, in relation to
a certain matter, to wit, the case of Augustus Binswanger,
administrator of the estate of Thomas G. Jack, deceased,
against the West Chicago Railroad Company, a corporation,
on a suit for damages pending in the Superior Court of
said Cook County; that on the thirtieth day of December,
in the year of our Lord one thousand eight hundred and
ninety-eight, the same grand jury returned another indict-
ment in due form of law in open court in said Criminal
Court of Cook County, at the same term thereof, against
said James J. Lynch and one Edward J. Powell on a cer-
tain charge of unlawfully conspiring and agreeing together
to do an illegal act injurious to the administration of pub-
lic justice; that on the thirty-first day of December, in the
year of our Lord one thousand eight hundred and ninety-
eight, the same grand jury returned another indictment in
due form of law in open court in said Criminal Court of
said Cook County, at the same term thereof, against the
said James J. Lynch, charging the said James J. Lynch
therein with a certain misdemeanor, to wit, attempting
directly to corrupt and bribe a certain juror, to wit, Martin
J. Fitzgibbon, by offering the said Martin J. Fitzgibbon a
certain gift and gratuity, to wit, the sum of two hundred
dollars, with intent to bias the opinion and influence the
decision of said Martin J. Fitzgibbon as such juror in rela-
tion to a certain matter, to wit, the case of Albert Sielesch
against West Chicago Street Railroad Company, a corpo-
ration, on a suit for damages in the Circuit Court of Cook
County, and the case of Bridget Clancy against West Chi-
cago Street Railroad Company, a corporation, on a suit for
damages in the Circuit Court of said county; that on the
twenty-third day of December, in the year of our Lord one
thousand eight hundred and ninety-eight, the same grand

Sullivan v. The People.

jury returned another indictment in due form of law in open court in said Criminal Court of said Cook County, at the same term thereof, against said James J. Lynch, charging the said James J. Lynch therein with a certain misdemeanor, to wit, attempting directly to corrupt and bribe a certain juror, to wit, Christopher Hawthorne, by offering the said Christopher Hawthorne a certain gift and gratuity, to wit, the sum of one hundred dollars, with intent to bias the opinion and influence the decision of said Christopher Hawthorne as such juror, all of which said indictments so returned as aforesaid are now pending and have been pending ever since so returned as aforesaid in said Criminal Court of Cook County; that said James J. Lynch has not pleaded to said indictments, or any of them, and has never been arraigned nor tried thereon; that said James J. Lynch and one Alexander Sullivan did at different times commit various other like criminal offenses in said county, for which at the time of the commission of the conspiracy hereinafter described, they were each subject to indictment in the Criminal Court of Cook County aforesaid, and that the state's attorney of said county was at the time aforesaid of the commission of the conspiracy hereinafter described, gathering evidence of commission of said criminal offenses for the purpose of presenting the same before a grand jury in and for said county, thereafter to be duly impaneled and sworn, and for the purpose of procuring indictments by and from said grand jury so to be impaneled and sworn as aforesaid against James J. Lynch and such other parties as were criminally implicated with him in the commission of said criminal offenses so being investigated for the purpose aforesaid; that said Alexander Sullivan, one Frederick St. John, one George P. Murray and one Edward Maher, late of the county of Cook, on the first day of September in the year of our Lord one thousand nine hundred and one, in said county of Cook in the State of Illinois aforesaid, well knowing the premises aforesaid, unlawfully, feloniously, fraudulently, maliciously, wrongfully and wickedly did conspire and agree together with one Josephine Gordon and one Dennis Ryan, with the fraudulent and malicious intent then and there wrongfully and wickedly to do a certain illegal act then and there injurious to the administration of public justice, to wit, to then and there solicit, entice, persuade and induce said James J. Lynch to absent, keep and secrete himself out of and from the jurisdiction of said Criminal Court of said

Cook County, and not to appear before said Criminal Court for trial upon said indictment so pending as aforesaid, or any of them, so that he, the said James J. Lynch, could not be tried on said indictments so pending and returned against him, said James J. Lynch as aforesaid, and so that he, the said James J. Lynch, could not and would not be arrested and brought to trial upon such further and other indictments as might be returned as aforesaid against him, the said James J. Lynch, contrary to the statute and against the peace and dignity of the same people of the State of Illinois."

The remaining four counts differ from the first count only in the language charging the conspiracy and in the conclusions of the counts.

A motion was made by the defendant, Sullivan, who pleaded and was tried separately, to quash the indictment, which was overruled. His counsel contend here that the court erred in refusing to quash the indictment, urging that it should have been quashed because of the allegation therein, " that said James J. Lynch and one Alexander Sullivan did, at different times, commit various other like criminal offenses in said county," etc., which counsel say is vague and uncertain, the offenses not being named, or when and where they were committed, if at all. The offense charged against the defendant, Sullivan, is that he, St. John, Murray and Maher conspired with Josephine Gordon and Dennis Ryan to " solicit, entice," etc., James J. Lynch to remain from out the jurisdiction of the court, and not to appear for trial on the indictments found against him, or on such other and further indictments as might be found. The indictment charges the conspiracy in apt language, and even though the allegation as to the commission of " various other like crimes " by the defendant, and Sullivan is obnoxious to the criticism of counsel, this does not invalidate the charge of conspiracy. *Utile per inutile non vitiatur.*

It is contended that the indictment should have been quashed because the grand jury was not drawn, summoned and impaneled as required by law. Counsel admit, and the record is, that August 5, 1901, an order was entered

by the court directing " that a grand jury be drawn, summoned, selected and impaneled in the manner provided by law," and no objection is made to the order. The record recites what was done, showing that the things required by the statute were done. But counsel object that these recitals are mere recitals of the clerk. In this view we can not concur. The record is the record of the court, and is the proper and legal evidence of what was done in the premises. The record recites:

" The panel of the grand jurors being now filled, the court having now here appointed Joy Morton foreman of said grand jury, the grand jurors aforesaid were duly sworn and charged by the court, and thereupon retired to consider their presentments."

In Williams v. The People, 54 Ill. 422, the court say :

" The record sufficiently shows that the statute was complied with when it recites that the grand jury was called, impaneled and sworn, and a foreman appointed."

Section 9 of Division 11 of the Criminal Code provides :

" No motion in arrest of judgment or writ of error shall be sustained for any matter not affecting the real merits of the offense charged in the indictment."

The motion to quash the indictment was properly overruled.

After the motion to quash was overruled by the court, the defendant, before pleading, moved the court for a rule on the state's attorney to furnish him with a bill of particulars, which motion was overruled. Subsequently, after defendant had pleaded not guilty, but before the commencement of the trial, defendant filed a sworn petition, praying for a like rule on the state's attorney. It is alleged in the petition, among other things, as follows :

" That he intends in good faith to defend himself against the supposed crime or misdemeanor intended to be alleged against him in said indictment, but that he is ignorant of the facts constituting the same, and can not safely go to trial herein until there shall be rendered to him a bill of particulars, or statement of the facts constituting the offense or crime intended to be charged against him, with

such certainty as to person or persons, time or times, and place or places, and all facts relied on by the state, as will apprise him of the accusations against him, and enable him to prepare his defense herein; that such bill of particulars is important, indispensable, material and necessary to the defense of this defendant in this case," etc.

The court denied the petition and defendant excepted.

The indictment charges the conspiracy in general language, not alleging any overt acts.

"If an indictment for conspiracy is in mere general terms, not charging overt acts, the course is to order a specification of the particulars." 1 Bishop on Criminal Procedure, Sec. 644.

"In many cases of general charges (e. g., conspiracy where the indictment merely avers a general conspiracy to cheat) such a specification on the part of the prosecution will be exacted." Wharton's Crim. Pl. & Prac., 8th Ed., Sections 157, 703. "When the counts in an indictment for a conspiracy are framed in a general form, the judge will order the prosecutor to furnish the defendants with a particular of the charges upon which he means to rely, and such particular ought to be so framed as to give the defendants the same information as would be given by a special count." 3 Russell on Crimes, 9th Am. Ed., Sec. 173; see also, Rex v. Hamilton, 7 C. & P. 448; and Mayor, etc., of N. Y. v. Marrener, 49 Howard's Prac. 36.

The last is a well considered case, citing numerous authorities. The practice indicated by the authorities cited has been followed in this state. McDonald v. The People, 126 Ill. 150.

We are of opinion that the court should have granted a bill of particulars in the present case, but it being within the discretion of the court whether to grant it or not, we can not say that the refusal to grant it is reversible error. 1 Bishop on Crim. Procedure, Sec. 643; Commonwealth v. Giles, 1 Gray, 466; same v. Wood, 4 Gray, 11.

On the trial counsel for the defendant objected to conversations between the prosecuting witness Lynch, Coughlin and others, the defendant not being present at such conversations, on the ground that the persons with whom the conversations were had were not charged in the indictment

as conspirators. The indictment alleges that Alexander Sullivan, Frederick St. John, George P. Murray and Edward Maher " did conspire and agree together with one Josephine Gordon and one Dennis Ryan," etc.

The words, " and with others to the grand jury unknown," are not, nor are equivalent words used in the indictment. Josephine Gordon and Dennis Ryan are the only persons with whom the indictment charges the defendants to have conspired. The question of law raised by the objection is, whether, if a person not mentioned in the indictment as a conspirator, either by name, or as a person unknown to the grand jury, but the evidence tending to prove that he was such, his acts and declarations may be proved, with the same effect against the defendants as if he were mentioned in the indictment as a conspirator. This question must be determined on principle, and with reference to the established rules of pleading and practice. In 1 Chitty on Criminal Law, 4 Am. Ed. 211–213, the author says:

" It is in general necessary to set forth the names of third persons with sufficient certainty; and, therefore, it seems to be generally agreed at this day, that an indictment for suffering divers bakers to take, etc., against the assize, when that offense was indictable, or for distraining divers persons without just cause, or for taking divers sums of money of divers persons for toll, can not be supported."

The author then proceeds to say :

" There are indeed some cases in which the names of third persons can not be ascertained, in which it is sufficient to state ' a certain person or persons to the jurors aforesaid unknown.' "

The author, after stating instances of such cases, proceeds thus :

" But these cases are exceptions to the general rule, and are supported by the peculiar circumstances which render a strict observance of the common maxim incompatible with the purposes of justice. For wherever the name of the party injured is known, it is absolutely necessary to insert it. Thus, in an indictment for larceny, though the goods may be said to be the property of persons unknown,

if that is actually the case, yet, if the owner be really known, the allegation will be improper, and the prisoner must be discharged from that indictment, and tried upon a new one rectifying the mistake."

The same author gives a precedent of an indictment for conspiracy, where some of the persons conspired with by the defendants are unknown to the grand jury. Ib., Vol. 3, star p. 1152. In an indictment it was alleged that the defendants (naming them) did "unlawfully combine, conspire, confederate and agree together to cheat and defraud certain liege subjects of our Lady the Queen, being tradesmen, of divers large quantities of their goods and chattels." The defendants were convicted and the conviction was sustained by the Court of Queen's Bench, but on *certiorari* to the Exchequer the judgment was reversed, Tindal, C. J., saying:

"The charge is that the defendants conspired to cheat and defraud divers liege subjects, being tradesmen, of their goods, etc., and the objection is that these persons should have been designated by their christian names and surnames, or an excuse given, such as that their names are to the jurors unknown; because this allegation imports that the intention of the conspirators was to cheat certain definite individuals, who must always be described by name, or a reason given why they are not; and if the conspiracy was to cheat indefinite individuals, as for instance those whom they should afterward deal with or afterward fix upon, it ought to have been described in appropriate terms, showing that the objects of the conspiracy were, at the time of making it, unascertained, as was done in the case of Rex v. DeBerenger and Regina v. Peck, and it was argued that if, on the trial of this indictment, it had appeared that the intention was not to cheat certain definite individuals, but such as the conspirators should afterward trade with or select, they would have been entitled to an acquittal; and we all agree in this view of the case, and think that the reasons assigned against the validity of this part of the indictment are correct," etc. 3 Russell on Crimes, 9 Am. Ed., star p. 153; see also, to the same effect, Wharton's Crim. Pl. & Prac., Sec. 11, 112; Wharton's Crim. Ev., 9th Ed., Sec. 97; 2 Wharton's Crim. Law, Sec. 1393; 1 Bishop on Crim. Procedure, Secs. 546, 549, 552; Regina v. Biss, 8 C. & P. 773; Blodget v. The State, 3

Ind. 403; Moore v. The State, 65 Ib. 213; State v. McIntire, 59 Ia. 264; Cameron v. The State, 13 Ark. 712; Reed v. The State, 16 Ib. 499.

It is held by the authorities cited that a statement in the indictment of the names of persons with whom the indicted defendants conspired, is descriptive of the offense; that the general rule is that such names must be stated, when known; that when unknown they may, *ex necessitate*, be designated as persons to the grand jury. unknown, and that the latter designation is so material that if, on the trial, it appears from the evidence that the person or persons so designated were known to the grand jury when the indictment was found, there can be no conviction of such persons. Such being the law, it follows, as we think, that it is incompetent, on the trial, to prove, as against the defendants, the acts and declarations of a person not mentioned in the indictment by name as a conspirator, or designated therein as a person unknown to the grand jury. The indictment in this case avers that the defendants "did conspire and agree together with one Josephine Gordon and one Dennis Ryan," etc. No other person with whom they conspired is mentioned by name, or otherwise designated. The averment is part of the description of the offense charged, and, by mentioning only Josephine Gordon and Dennis Ryan as persons with whom the defendants conspired, the defendants were informed that they were the only persons with whom the prosecution would seek to prove they conspired. It is not perceived why the maxim *Expressio unius exclusio alterius est*, although usually applied in the interpretation of statutes and written contracts, is not logically applicable to the indictment.

In McDonald v. The People, 126 Ill. 150, McDonald and others were indicted for conspiracy to obtain money from Cook county by false pretenses. The trial court required the state's attorney to furnish the defendants with a bill of particulars, which was done. The bill of particulars related solely to services performed and materials furnished at the Normal School. The trial court, over the objection

of the defendants, admitted the prosecution to introduce
evidence of fraudulent bills for services rendered and mate-
rials furnished at the court house, insane asylum, infirmary
and hospital. The Supreme Court held this was error,
saying, among other things:

"Under the plainest principles of law relating to the
admission of evidence under an averment in pleading—treat-
ing the bill of particulars as a pleading—the evidence
ought to have been confined to the twelve bills specified
in the bill of particulars; otherwise the bill of particulars
was a delusion, a legal snare, furnished for the purpose of
deceiving the defendants."

In Starkweather v. Kittle, 17 Wend. 21, cited with
approval by the court in the McDonald case, the court say:

"When the bill is furnished, it is deemed a part of the
declaration, plea or notice to which it relates, and is con-
strued in the same way as though it had originally been
incorporated in it."

In Mayor, etc., of N. Y. v. Marrener, 49 Howard's Prac.
Rep. 36, 39, the court quotes the following from Smith v.
Hicks, 5 Wend. 51:

"A bill of particulars has been sometimes said to be an
amplification of the declaration; its object is to apprise the
opposite party of the nature of the action or defense."

It will be observed that the court, in McDonald v. The
People, treats the bill of particulars as a pleading. In that
case the court also say:

"The object of a bill of particulars is to give the accused
notice of the specific charge he is required to meet on the
trial, so that he may be prepared to defend."

It is also the object of an indictment to inform the
defendant of the charge against him, so that he will know
what he has to meet on the trial and be prepared to defend,
and if it is incompetent to admit evidence of material mat-
ter not mentioned in a bill of particulars, as otherwise the
bill of particulars would be "a delusion, a legal snare," it
is not perceived why the same rule does not apply to an
indictment. The indictment notified the defendant Sul-
livan, in effect, that the prosecution would rely on proof of

the acts and declarations of those only who are named in it as conspirators. It is claimed by counsel for the State, in their argument, that Dan Coughlin, Mrs. McGuirk, Philip Mulligan and Dr. Leonard St. John were conspirators, and the court, over the objection of the defendant, Sullivan, permitted James J. Lynch, the main witness for the prosecution, to testify, on his examination in chief, to conversations between himself and each of the above named persons, out of the presence and hearing of Sullivan, which testimony was very prejudicial to the defendant. The admission of this testimony was error.

It appears from the evidence that Cummings and Hackett were sureties for Lynch on his bail bond, and that they were anxious to withdraw from the bond. Lynch testified to conversations between himself and Cummings and himself and Hackett with reference to the bond, and defendant's attorneys moved to strike out the testimony. In the case of Cummings the court overruled the motion, and in the case of 'Hackett reserved the question, saying that if the evidence was not connected, he would strike it out. Neither of the conversations was in the presence or hearing of Sullivan. The evidence was incompetent and should have been stricken out, but was not. The court permitted Lynch, in his examination in chief, to testify to a conversation between himself and Mrs. McGuirk, and, among other things, that Mrs. McGuirk said she had a letter which had been sent by the defendant, Sullivan, to her uncle, in regard to Lynch, and that she started to read, and read from the letter. This evidence was strenuously objected to by Sullivan's attorneys, but the court overruled all their objections, whereupon the following question and answer followed:

"Q. Now go on and state what she read from that letter. A. The only bad goods we ever bought were got from Lynch, and if he wished to come back and crucify me, why that is his affair. I can not help it, and I think it would be much better for Lynch to be governed by his friends, instead of running to other people."

Mrs. McGuirk was not charged in the indictment as a conspirator. No notice was given or effort made to pro-

duce the letter, although Mrs. McGuirk could have been conveniently called; as will hereafter appear. The evidence was the merest hearsay, the testimony of the witness being that a third party, not under oath, had said that Sullivan wrote the letter, and had read what such third party said was in it. Counsel for the people say of this evidence:

" The witness did not give its contents, but simply testified as to what was read to him by a co-conspirator therefrom—nothing but a conversation."

Lynch testified to what Mrs. McGuirk purported to read from the letter, and the court having overruled the objection of the defendant's attorneys, what Lynch testified was read went to the jury as matter contained in a letter written by Sullivan. In Rawson v. Curtiss, 19 Ill. 456, a witness testified that he saw a " letter of credit," and testified to the substance of its contents. The trial court excluded the testimony as to the contents of the letter of credit, but refused to exclude that part of the witness' testimony which mentioned the document as " a letter of credit." The court held this ruling error, saying :

" The court permitted the witness to give this character to a paper which was not produced, and its non-production unaccounted for, violating that familiar rule of evidence that the contents of a writing can not be shown by parol, unless notice to produce it has been given and disregarded, or that it is lost or destroyed."

In the present case there is no evidence beyond mere hearsay that Sullivan ever wrote a letter to Mrs. McGuirk's uncle. In Anderson v. Irwin, 101 Ill. 411,414, the court say :

" Thus it is a familiar rule that no evidence will be received of a fact which, from its very nature, shows there is better evidence of such fact, without first satisfactorily accounting for the absence of the higher order of evidence; or, more briefly, the law requires in proof of a fact the best attainable evidence."

In Rankin v. Crow, 19 Ill. 626, Mariner v. Saunders, 5 Gilm. 113, and Cook v. Hunt, 24 Ill. 535, it is held that, when a paper has been traced to a particular person, that

person must be produced before secondary evidence can be given of its contents.   The cases last cited are approved in Rhode v. McLean, 101 Ill. 467, as applicable where the evidence does not show that the paper has been destroyed. Such being the rule in civil cases, no reason is perceived why it should be relaxed in a criminal case in which the defendant's liberty is involved.

The letter in question, if there was any such, is shown by Lynch's testimony to have been last in Mrs. McGuirk's hands.   She, as the evidence shows, resides in Chicago, was easily accessible, but was not called by The People, nor was any attempt made to prove destruction or loss of the letter. Mrs. McGuirk was called as a witness for the defense and testified that she never had a letter from Sullivan, nor had her uncle to her knowledge, and that she did not read any letter to Lynch purporting to be from Sullivan, nor did she pretend to read any letter to him, and did not read nor pretend to read from any letter the matter testified to by Lynch.

That the evidence of Lynch in respect to the letter was prejudicial to Sullivan, will hardly be questioned.

The reasons for the rule excluding hearsay evidence are well stated in 1 Phillips on Evidence, 5th Am. Ed., Sec. 211–12.   The author quotes Buller, J., as follows:

" No evidence is to be admitted but what is upon oath; and if the first speech was without oath, another oath that there was such a speech makes it no more than a bare speaking and so of no value in a court of justice."   See also 1 Greenl. on Ev., 13th Ed., Secs. 87, 88.

Lynch testified in his examination in chief that for about eighteen months prior to December 13, 1898, he had, at the solicitation and with the knowledge of the defendant, Sullivan, bribed persons from time to time in cases against the West Chicago Street Railroad Company, during which time Sullivan was the attorney of this company; that he paid to jurors various sums varying from $50 to $100, and that when he bribed a juror he was paid for his services the same amount he paid the jurors; that if a juror was paid $50 he also got $50, and that the money with

which to bribe, including his compensation, was given to
him by Sullivan. He testified that the amount so secured
by him from Sullivan was about $3,000. George A. Yuille,
called by the defendant as a witness, testified that for
about seven years from January 21, 1896, he was second
vice-president and general manager of the West Chicago
Street Railroad Company, and was such while Sullivan
was at the head of the trial department of the company.
A number of questions were asked the witness for the pur-
pose of proving by him the facts stated in the offer of evi-
dence hereinafter quoted, which questions were ruled
against by the court on the ground that the evidence called
for was immaterial, when the following offer was made by
defendant's attorneys:

" We now offer to prove by George A. Yuille, the wit-
ness on the stand, that he had charge of the moneys that
were paid from the treasury of the West Chicago Street
Railroad Company to Alexander Sullivan, and to all per-
sons connected with the trial department, of which Alex-
ander Sullivan was the head, during Mr. Sullivan's connec-
tion with the company; that he knows that Mr. Sullivan
had no other way of drawing it from the company than
through him; that this witness knows that, during the
years 1897 and 1898, Mr. Sullivan drew no money from the
company for anything other than his salary; that he drew
no money for any other purpose than those indicated; that he
drew no money from the company which was not accounted
for by vouchers and written documents; that he drew no
money from the company except that of which there now
exists a written record."

The court refused this offer. We think this was error.
It was during the years 1897 and 1898 that Sullivan was at
the head of the trial department of the company, and dur-
ing those years that Lynch testified that Sullivan furnished
him with a large amount of money for the purpose of
bribing jurors in the interest of the street railroad com-
pany, and for paying him, Lynch, for his services in that
regard; and if Sullivan, during those years, received no
money from the company in excess of his salary, the ques-
tion for the jury, under the offered evidence, if credited,

would be whether it was probable or reasonable to suppose that Sullivan used his own money, or the money of some one other than the railroad company, for the purpose of bribing jurors in the interest of the. company.   The evidence offered strongly tended to disprove the testimony of Lynch, and should have been admitted.   We think it apparent from remarks of the court, in overruling questions to the witness Yuille, that the court failed to apprehend the materiality and probable effect of the offered evidence.   The court, in overruling one question, said:

"Does it make any difference, as far as this trial is concerned, where this money came from?   The charge here is against this defendant, wherever he may have gotten the money.   I don't see the connection."

The court made similar remarks, in ruling on another question, to the witness Yuille.   One Thomas Smallman, a witness for The People, testified that some time in the year 1898 he was a juror in the case of Samuel Cheevers v. The West Division Street Railway Company, and that Sullivan defended the case, and that Lynch paid him, the witness, $50 not to allow the company to be salted.   This question was then asked him: "What conversation did you have with him about going on the case?"

Sullivan's attorneys objected, and the court overruled the objection.   The Cheevers case is not mentioned in the indictment as one of the cases in which Lynch was indicted for bribing a juror.   The witness then proceeded to testify as to a conversation with Lynch about bribing jurors generally, and also as to a conversation about the Cheevers case, before he was called to sit as a juror in that case, the conversation not being in Sullivan's presence or hearing. Without referring specially to these conversations, it is sufficient to say that while the evidence of the witness might be competent on an indictment against Lynch for bribery, it was clearly incompetent as against the defendant, Sullivan.

The testimony of Frank S. O'Brien is objected to here, but no objection to the main part of his testimony has been preserved by the bill of exceptions, and therefore we can not consider the objection.

Counsel for Sullivan contend that the admission of Lynch's evidence as to conversations between him and Sullivan was erroneous. In this view we can not concur. The evidence was admissible for the purpose of showing Sullivan's knowledge of and connection with the acts of bribery testified to by Lynch, and consequently motive on the part of Sullivan to cause Lynch's removal beyond the jurisdiction of the court, as charged in the indictment. It is contended that proof of motive was not necessary, citing Farris v. The People, 129 Ill. 521. The question is whether evidence tending to prove motive was competent, and we think it was, and that the admission of the evidence is not inconsistent with the opinion in the Farris case.

Counsel for Sullivan object to certain instructions for The People. Instruction 10 submits to the jury the question whether Dan Coughlin and Mamie McGuirk were conspirators, and instructs the jury that if they were, any act or declaration of theirs, or of any other person shown to have been a conspirator, in the prosecution of the common design, was the act or declaration of all the conspirators, for which all were alike responsible. Instruction 23 also submits to the jury the question whether Coughlin and Mrs. McGuirk were conspirators. Instruction 33 involves the theory that Mamie McGuirk may be found to be a conspirator, and, as such, responsible for the acts and declarations of other conspirators. For reasons heretofore stated, it was error to give these instructions.

The fourteenth instruction for the people is framed on the hypothesis that Lynch was an accomplice, and instructs the jury as to the weight to be given to his evidence as such. The indictment charges a conspiracy, etc., to solicit, entice, persuade and induce Lynch to absent, keep and secrete himself out of the jurisdiction of the court. It is obvious that Lynch could not have been an accomplice in such a conspiracy. The instruction should not have been given, but we can not see how it would prejudice the defendant.

Instruction 29 for The People is as follows:-

" If the jury believe from the evidence, beyond a reasonable doubt, that on or about September 12, 1901, a payment of money was made to Josephine Gordon for James J. Lynch, in pursuance of and to further the common design of the conspiracy charged in the indictment in the case, then such payment is to be considered as having been made by all conspirators, and in their behalf, and as their act; and if the jury find that the defendant, Alexander Sullivan, was then a party to such criminal conspiracy, then such payment is deemed in law as the act of Alexander Sullivan, as well as any other members of such conspiracy."

The instruction makes the payment of money to Josephine Gordon for Lynch, by any one, whether or not mentioned in the indictment as a conspirator, or whether in fact a conspirator, evidence against Sullivan. Also, the payment might be " in pursuance of and to further the common design," and yet the party making it might himself be wholly innocent of any wrong. He might be a mere agent or messenger. We think it was error to give the instruction.

We find no substantial error in other instructions for The People. Forty instructions were given for The People, some of them being mere repetitions of principles announced in others. The giving of very numerous instructions, and repetitions of the same principles of law, should be avoided. West Chicago St. Ry. Co. v. Petters, 196 Ill. 298, 302; Henry v. The People, 198 Ib. 162, 198.

The refusal of the court to give certain instructions asked on behalf of the defendant is complained of. Some of the refused instructions relate to the law in relation to reasonable doubt, in regard to which the jury was instructed by other instructions given on behalf of the defendant. We are of opinion that instruction 18, asked by defendant, should have been given, and that there was no substantial error in the refusal of other instructions asked by defendant.

It is urged that the verdict is against the weight of the evidence; that the testimony of Lynch is contradicted in numerous particulars, and that the evidence is insufficient to support a finding that the defendant is guilty beyond a reasonable doubt. The evidence is too voluminous to refer to

or discuss in detail. ' The credibility of the witnesses *pro* and *con*, and the weight to be given to the testimony of each witness, were questions for the jury, and we can not reverse the judgment without remanding on the ground that the verdict is not supported by the evidence.

In Cohn v. The People, 197 Ill. 482, cited by counsel for defendant, the court, after referring to the evidence, say:

" Applying this test to the evidence of Vance, and to the witnesses who corroborated that of the defendants, who swore that Vance was not in the store on Sunday at all, and that the transaction detailed by him did not occur, we think the jury were not justifiable in finding the defendants guilty."

Yet the court remanded the cause for another trial. This is in accordance with the usual course of procedure.

In McDonald v. The People, *supra*, the court say:

" Every person charged with a crime is entitled to a fair and impartial trial—a trial in conformity to the laws of the state—and it is a duty resting upon the courts to see that this guaranty conferred by the laws upon every citizen is upheld and sustained. A fair and impartial administration of the laws is one of the most sacred rights of the citizen— one that can not be abridged or frittered away. In looking over the record before us, we are not satisfied that the defendant, McDonald, had a fair and impartial trial in the Criminal Court."

Substituting Sullivan for McDonald, we think the language applicable to the present case.

The judgment will be reversed and the cause remanded.

Mr. Justice WINDES took no part in the consideration or decision of this case.