No. 15,285.

WRIGHT *v.* THE PEOPLE.
(156 P. [2d] 123)

Decided January 29, 1945. Rehearing denied February 19, 1945.

225

Mr. JOHN J. MORRISSEY, Mr. HAROLD G. KING, Mr. WILLIAM H. SCOFIELD, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFF in error, Charles Wright, alias J. A. Harper, alias Charles Lewis, together with Bert Acree, Eddie J. Goss and Wallace Graham, were informed

against for conspiracy to commit false pretenses and conspiracy to commit a confidence game. The defendants Acree and Graham were not apprehended. Trial was had as to the defendants Wright and Goss. A directed verdict was entered finding Goss not guilty on either count and Wright was found guilty of conspiracy to commit false pretenses.

Defendant Wright was a California carpenter. He testified that he happened to see an oil lease on land in Wyoming and went to Wyoming and visited the Cole Creek Field where he picked up a piece of core drill, took a sample of oil and obtained pictures of an oil rig and procured some maps, with which equipment he came to Denver. There he joined up with Acree and Monaghan, who apparently knew nothing about oil, but much about people, and together they successfully solicited various people to file oil and gas lease applications in the United States District Land Office at Cheyenne, Wyoming, upon lands which they would point out upon their maps. These lands had no prospective value for oil or gas. The filing fee at the land office for these applications was ten dollars. However, defendant Wright charged apparently whatever he thought he could get; in one instance $240.00 for a 480-acre filing. Out of this he paid the ten dollar filing fee to the United States District Land Office and kept the rest. The defendant himself refers to these deals as selling leases, although he had no leases to sell and no interest whatever in these lands, and, even if it had been oil land and there had been no prior application filed on the parcel sought, it would have been necessary for the applicant to pay a rental of fifty cents per acre and give bond and comply with the other requirements for obtaining an oil and gas lease upon the federal domain in order to have anything of possible value. The people to whom he "sold," so far as the record shows, were inexperienced people, entirely ignorant as to oil production. In addition to the "sale" price, in a number of

cases the defendant collected a further charge of $96.00 for survey and supposed expenses, referred to as a "clean-up," but no survey was made and he admitted that when arrested he had no money left.

After getting money from these people in Denver, the defendant went back to California. He testified to no further action or interest in regard to these people from whom he had obtained money, except vaguely that they had "contacted" one hundred or seventy-five groups or oil companies interested in locations.

The numerous assignments of error may be reduced to five issues raised and urged in the brief of plaintiff in error:

■ First, as to the sufficiency of the evidence. We have carefully reviewed the record. A considerable part of the evidence was by demonstration and pointing to locations upon maps which had been submitted to the witness, so that we could not retry this case on the record if we would, but there is ample evidence to support the verdict and judgment below. The written instrument (Exhibit 11) by which defendant obtained money from three witnesses and in which he declares that he has the necessary experience, knowledge and personnel for filing and locating oil lands and refers to the land to be filed on as on a known geological structure and purports to act for an association, is by itself eloquent of fraud.

■■ Second, as to the testimony of witness Humphreys, who was permitted to testify for the prosecution that defendant Graham had been apprehended and has been in Leavenworth prison, that defendant Acree was fleeing from the officers, and that the F. B. I. and other agencies were looking for these men. This testimony was adduced on redirect examination after counsel for defendant Wright had brought out that Acree had worked as a bond salesman for a company here in Colorado and had been here in the state. So far as in answer to this testimony it was properly admissible.

228

*People v. Lee Chuck,* 78 Cal. 317, 20 Pac. 719. Further, there was no objection raised to its intrduction; no motion was made that it be stricken or not considered, and it was not called to the attention of the Court on motion for new trial, so if error, it was waived.

 Third, on voir dire examination, counsel for one of the defendants referred to the charge as involving a penitentiary offense, whereafter the district attorney told the prospective juror that there could be probation granted, but with those matters the jury had nothing to do. Many cases have held such references, even though improper, to constitute no grounds for reversal. 23 C.J.S. 586, note 74. If there was error in referring to probation, it was cured by the instruction of the Court that it be disregarded.

 Fourth, as to evidence concerning Monaghan. All through the trial Monaghan was testified to as one of the associates in the conspiracy and his certain acts and statements, outside the presence of defendant Wright, were received in evidence. However, he was not named in the information as one of the conspirators, although he was known as such, and the receipt of such evidence is now assigned as error. The persons who enter into a conspiracy are not descriptive of the offense. *People v. Smith,* 239 Ill. 91, 107, 87 N.E. 885. The state need not at its peril inform against all conspirators in order to convict those who are informed against, and the fact that Monaghan may have participated in the conspiracy does not make inadmissible the evidence of acts and statements of the named conspirators in which he participated. *Sullivan v. People,* 108 Ill. App. 328, cited by cunsel does not so hold. What it does hold is "that it is incompetent, on the trial, to prove, as against the defendants, the acts and declaration of a person not mentioned in the indictment by name as a conspirator, or designated therein as a person unknown to the grand jury."

If we follow this authority, there is in the record

some incompetent evidence. However, in contrast to the Sullivan case, this evidence was received without objection by this defendant; no request was made for any instruction concerning it and even now no objectionable evidence is called to the attention of the Court. From our own search of the record, it would appear that all such evidence was of separate transactions and cumulative, and the dealings and statements of defendant Wright were established without imputing to him any act or statement of Monaghan made without his presence. No substantial prejudice could have resulted from this evidence, and particularly in view of the unusual latitude in the admission of evidence permitted in conspiracy cases (*Smaldone v. People,* 103 Colo. 498, 88 P. [2] 103) we find no reversible error in its admission.

Finally, defendant complains of sufficiency of the information. After conviction the objection is too late. *Bridge v. People,* 63 Colo. 319, 165 Pac. 778. In any event, there is no merit to this contention as the information is in form and substance like that approved in *Imboden v. People,* 40 Colo. 142, 90 Pac. 608. See, also, *Helser v. People,* 100 Colo. 371, 68 P. (2d) 543. And where the intent of the conspiracy was not against any particular person, it is proper, as was here done, to charge an intended wrong against some particular persons or the general public. 15 C.J.S. 1117.

Defendant had a fair trial, and the judgment is affirmed.

MR. CHIEF JUSTICE BAKKE and MR. JUSTICE BURKE concur.