No. 21107.

Donald E. Altobella *v.* People of the
State of Colorado.
(420 P.2d 832)

Decided December 5, 1966

178

GEORGE M. GRABER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT C. MILLER, Assistant, for defendant in error.

*In Department.*

PER CURIAM.

THE nature of the alleged errors attributed to the trial court makes necessary a detailed chronology of the proceedings below.

On October 19, 1961, an information was filed in the District Court of Jefferson County charging defendants William D. Gottfried and Donald E. Altobella with burglary, larceny and conspiracy to commit burglary. On October 30, 1961, both defendants entered pleas of not guilty to all charges.

Trial was set for May 8, 1962. On that date defendants' counsel of record moved to withdraw as counsel

for defendant Altobella, who had been released from custody on bail, for the reason that he was unable to contact Altobella for trial preparation. The court permitted him to withdraw. The trial date was vacated and the matter continued to May 14, 1962, for resetting, at which time it was again continued for resetting to January 2, 1963. On this date co-defendant Gottfried withdrew his plea of not guilty to the charge of burglary and entered a plea of guilty, after which upon motion of the district attorney the court dismissed the other two counts of larceny and conspiracy to commit burglary. On February 14, 1963, the court sentenced Gottfried to a term of not less than six nor more than eight years in the State Penitentiary at Canon City.

On January 2, 1963, a second attorney entered his appearance for defendant Altobella whose trial was then set for April 16, 1963. In early April the district attorney was advised on three occasions by defendant's second attorney that he was unable to locate or contact defendant. Neither defendant nor his attorney appeared for trial on April 16, 1963. The attorney was held in contempt of court, defendant's bond was forfeited, and instructions were given to the sheriff to arrest and hold defendant in custody. The matter was continued to April 22 at which time defendant and his attorney appeared. The attorney advised the court that he had been able to see defendant only once since January 2, 1963; that defendant had not cooperated; and that he could not represent defendant under such circumstances. He asked leave of court to withdraw. The court permitted the withdrawal, and then fixed defendant's bond at $100,000.

On May 8, 1963, defendant and his third attorney appeared and moved the court to reduce the $100,000 bond, which motion was denied by the court. The case was then set for trial to a jury on October 3, 1963. Again, on August 2, 1963, defendant moved, by a fourth attorney appearing specially, to reduce the bond, which mo-

tion was also denied. Thereafter this court in an original proceeding entitled *Altobella v. District Court,* 153 Colo. 143, 385 P.2d 663, ordered that defendant's bond be reduced to $7,500. This new bond was made returnable at the trial theretofore set for October 3, 1963.

On October 3, 1963, defendant and the fourth attorney, again appearing specially, filed a Motion for Vacation of Trial Setting and for Change of Judge supported by affidavits of defendant, of one Eugene Deikman, an attorney at law, and of one Michael Conjanus Holslaw, a senior law student. Defendant's third attorney was also present and asked leave to withdraw for lack of cooperation on defendant's part. This was permitted by the court. The trial date was again vacated and the matter continued to October 7, 1963, for resetting. The court found that the delay was caused by the defendant, held him in contempt of court, and sentenced him to ninety days in the county jail. Defendant was denied bond pending his appeal on the contempt charge. In another original proceeding entitled *Altobella v. Priest,* 153 Colo. 309, 385 P.2d 585, this court vacated, set aside and held for naught the judgment of contempt and the sentence imposed thereon.

On October 7, 1963, defendant's fifth attorney entered his appearance and the case was continued to October 21, 1963, for resetting for trial. On that date defendant and his attorney appeared and the case was set for a jury trial on October 29, 1963, over the objection of defendant.

On October 29, 1963, defendant submitted another Motion for Vacation of Trial Setting, for Change of Judge and for Change of Venue. This motion was not supported by affidavits but referred to the previous affidavits in support of the first motion for disqualification heard October 3, 1963. The motion was denied.

The case finally proceeded to trial on October 29, 1963, and the jury found Altobella guilty on all three counts of burglary, larceny and conspiracy to commit

burglary. Defendant's motion for new trial was denied by the court and after pre-sentence investigation defendant was sentenced to concurrent terms of six to eight years on each count of burglary and conspiracy to commit burglary, and to an additional consecutive term of six to eight years on the count of larceny.

A resume of the evidence showed that while deputy sheriff Fryberger was on a routine patrol in the early morning hours of October 13, 1961, he observed that the Tally Ho Lounge located at 7655 West Alameda Avenue, Jefferson County, had been broken into through a rear window. The officer radioed for help and in response Officer Pedrett arrived. Fryberger then noticed that the front door of the building, which he had previously observed to be closed, had been kicked out. A radio alarm was given and an immediate search of the surrounding area was begun.

Officer Heinrich observed a 1953 Pontiac traveling fairly fast westward on Alameda, in which Gottfried was the driver and Altobella the passenger. He pursued the automobile with spotlight shining in the rear of the Pontiac for about a block and when it would not stop used his red light and siren, pursuing the car some distance until it finally did stop. Officer Heinrich approached the left side asking Gottfried for his license. As Gottfried pulled out his license the officer noticed blood on his hand. The officer then pulled his revolver and directed both men to place their hands behind their necks and to get out on the left side of the car. They refused to do so and a second order was given which was also disobeyed. Heinrich then cocked his revolver and a third time ordered them out and they complied. Two other officers then arrived at the scene. Gottfried and Altobella were then searched and blood was observed on the hands of both men. The car was searched and a loaded pistol was found on the passenger side of the front seat and a briefcase on the floor. This briefcase contained two crowbars, chisels, a screwdriver,

pliers, a hammer, and many pouches and sacks containing $2,480.62 in coins, currency and checks. The pouches, sacks and money were identified by Joe Barone, manager and part owner of the Tally Ho Lounge, as the property of the Tally Ho Lounge which he had placed in the safe earlier that morning prior to closing. In addition, a torn $5 bill was found on the person of Altobella, which Barone identified as having been given to him by a lady customer the day before.

After their arrest, Gottfried and Altobella were returned to the Tally Ho Lounge where the investigation was completed. Altobella there apologized to Joe Barone for the break-in, saying he liked the place and was sorry he had to knock it off.

Defendant Altobella did not offer any evidence at the trial.

Defendant alleges four errors as grounds for reversal:

"I. That dismissal of the charge of conspiracy against co-defendant Gottfried made mandatory a dismissal of the same charge against defendant.

"II. That the Court erred in dismissing defendant's motion alleging bias and prejudice on the part of the trial judge.

"III. That the language of the judgment and sentencing was vague and ambiguous.

"IV. Evidence was obtained as the result of unlawful search and seizure of the vehicle."

Discussing these contentions in the order asserted, defendant's first alleged error is without merit. The recent case of *Bradley v. People,* 157 Colo. 530, 403 P.2d 876, is determinative of this contention, wherein it is stated:

"Bradley's final argument is that dismissal of the conspiracy charges against his accomplices, after they had pled guilty to the substantive crime, required a dismissal as against him. It is axiomatic that a district attorney need not inform against the other conspirators. *Wright v. People,* 113 Colo. 224, 156 P.2d 123. It is true that an

acquittal of all alleged conspirators but one renders a verdict of guilty invalid as to him since he cannot conspire with himself. *Mendelsohn v. People, supra.* In the instant case there was no judgment of acquittal or dismissal against the conspirators other than Bradley, *but a dismissal before trial at the request of the district attorney.* In such a posture, the situation is as though no charge of conspiracy had ever been filed against any of the conspirators other than Bradley." (Emphasis supplied.)

 The rule urged by defendant applies only where there is a judgment of acquittal or dismissal after jeopardy has attached. In the present case the conspiracy count was dismissed against the co-conspirator *before trial.*

 The second alleged error of denying defendant's motions for a change of judge because of bias and prejudice is likewise without merit. The applicable statute, C.R.S. 1963, 39-9-2, provides:

*"When Judge Deemed Incompetent*—(1) (a). In any criminal cause pending in any court of record of competent jurisdiction, the judge of said court shall be deemed incompetent to hear or try said cause in any of the following cases: * * *

(d) When the judge is in any wise interested or prejudiced, or shall have been of counsel in the cause, such prejudice of the judge must be shown by the affidavit of at least two credible persons not related to the defendant."

Defendant's first motion for change of judge alleges as follows:

"1. That the Honorable Judge in this matter on his own motion, revoked Defendant's bond previously set, held Defendant without bond for a period of time and then set a bond in the sum of One Hundred Thousand ($100,000.00) Dollars.

"2. That the Defendant made three requests for reduction on the grounds that said latter bond was exces-

sive, and all said requests were denied by this Court, whereupon Defendant was compelled to file an original proceeding in the Supreme Court, praying that a determination of excessiveness be made and that bond be reduced.

"3. That on September 3, 1963, the Supreme Court did find that said bond was 'grossly excessive and tantamount to a denial of the right of Petitioner', which facts show prejudice on the part of the Judge."

Defendant's second motion for change of judge alleges, in addition to the grounds set forth in the first motion, a fourth ground:

"4. That defendant was subsequently found by the Court in Contempt of Court on October 3, 1963, and was incarcerated in the County Jail, and that the Supreme Court of Colorado ordered the Contempt reversed, and ordered the defendant released, and that the Supreme Court of Colorado did find that defendant had committed no contempt, which facts show prejudice on the part of the Judge."

The second motion attempts to incorporate by reference the statutory affidavits supporting the first motion. A previously executed affidavit can lend no verity to a subsequent pleading containing new additional matter. The second motion is not entitled to consideration as it does not comply with the statute, being insufficient in form.

The grounds set forth in the first motion for change of judge are insufficient as a matter of law to compel disqualification. The facts alleged concerning revocation of defendant's bond, resetting the bond at $100,000, and refusal to reduce the bond, when considered in the procedural setting out of which the orders arose, are not such as to establish to the satisfaction of a reasonable mind that the presiding judge had a bias or a prejudice that would in all probability prevent him from dealing fairly with the defendant. Nor does the fact that the orders relating to the bond and refusal to reduce the

same were subsequently declared erroneous on appeal compel the conclusion that prejudice or bias existed toward defendant so as to prevent a fair trial. In *Walker v. People*, 126 Colo. 135, 248 P.2d 287, this court approved the following language:

" 'The previous rulings of a judge * * * although erroneous, numerous and continuous, especially when they are subject to review, are not sufficient to show such bias or prejudice as would disqualify him.' 33 C.J., §156, p. 1001, 48 C.J.S., Judges §82.

" 'The right to disqualify the presiding judge is based on an assumed prejudice or bias on his part, and not upon his views regarding the law of the case.' Citing cases. *State ex rel. Weltmer v. Taylor*, 42 N.M. 405, 79 P. 2d 937, 939."

Under the circumstances of this case, then, the denial of the motion for change of judge did not constitute error.

■ The defendant's third alleged error asserts that the language of the sentence is ambiguous and uncertain. We have examined the statement of the court at the pre-sentence hearing and the final order of judgment and find no vagueness, uncertainty or ambiguity which would render the sentences imposed void. Defendant's assertion is based upon the erroneous assumption that dismissal of the conspiracy charge against the co-conspirator before trial compelled a like dismissal of the conspiracy charge against the defendant. This proposition has been heretofore disposed of and requires no further discussion.

■ Defendant's last ground of error is based upon an alleged unlawful search and seizure of the vehicle in which defendant was riding at the time of his arrest. The record does not support this contention. A burglary had in fact been committed; radio alarm of the crime was broadcast to the arresting officer; immediate search of the area of the crime was commenced; defendant's car, which was the only one in the area, was seen travel-

ing at a fairly fast speed away from the scene; although it was signalled to stop by the officer, it continued on for some distance without responding to either the red light or the siren on the patrol car. When the car was finally stopped, the officer noticed blood on the driver's left hand. Both occupants refused to obey orders to get out of the car and did so only after a threat from the officer with cocked revolver in hand. Both men and the car were then searched.

██ ██ In light of all the circumstances, probable cause did exist and such justified their arrest. The search, then, being incident to a lawful arrest based upon probable cause, was reasonable and lawful and the evidence obtained from the search competent and admissible. *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236; *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996; and *Hopper v. People,* 152 Colo. 405, 382 P.2d 540.

██ An examination of the entire record indicates defendant did receive a fair and just trial and his guilt was established overwhelmingly by competent evidence.

The judgment is accordingly affirmed.

MR. JUSTICE DAY, MR. JUSTICE FRANTZ and MR. JUSTICE MCWILLIAMS concur.