No. 22613.

JOHN ERVIN SCOTT AND JOHN SANDY CHAVEZ *v.* THE PEOPLE OF THE STATE OF COLORADO.
(444 P.2d 388)

Decided August 19, 1968.     Rehearing denied September 9, 1968.

Edward H. Sherman, Public Defender, Stephen C. Rench, Assistant, for plaintiffs in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Robert C. Miller, Assistant, for defendant in error.

*En Banc.*

Opinion by David W. Enoch.*

John Ervin Scott and John Sandy Chavez, hereinafter referred to as the defendants or individually by name,

---

*Retired District Judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

were each charged in a six count information with the following offenses:

1. Burglary
2. Conspiracy to commit burglary
3. Larceny
4. Conspiracy to commit larceny
5. Receiving stolen property
6. Conspiracy to receive stolen property

At the conclusion of the evidence prior to giving the case to the jury, the trial court on motion by defendants' attorney dismissed the fifth and sixth counts relative to receiving stolen property and conspiracy to receive same, and these counts are not now in issue.

The jury returned a verdict of not guilty as to the burglary charge, but found both defendants guilty of conspiracy to commit burglary, larceny and conspiracy to commit larceny. Thereafter, defendants' motions for judgment of acquittal or in the alternative, a motion for a new trial was denied. Both defendants received sentences of from eight and one-half years to ten years on each of the three convictions, being counts two, three and four of the information, sentences to run concurrently. By writ of error, the defendants seek a reversal of the judgment and sentence.

The evidence showed that on the night of October 6, 1965, at or about 9:00 P.M., Ronald L. Smith heard some noise in the alley behind his house. Upon investigation he saw two or possibly three men in the darkness attempting to load some object into the trunk of a 1951 Plymouth. The car was fourteen years old and had had some custom work on it and, although there was some conflict in the evidence as to its exact color, it apparently was a car easily identified as being different from most automobiles. The witness heard one of the men say, "It is too big. We can't get it in our trunk. We'll have to get a truck." The men then left in the car and the witness, upon investigation, found the object to be a console

TV set situated on the driveway near or in the alley next to the ash pit of his neighbor's house.

A short time later the witness observed two men coming from the front area of a neighbor's house and proceeding in the direction of the TV set. The witness called to them but the two men started to run. The witness could not identify any of the men and could not tell if the two men who came from the front area were the same men who had earlier been trying to load the TV set into their car trunk. He did see from the street light that one of the men who came around the house had blond hair and was of medium build. Defendant John Ervin Scott had blond hair, but could not be positively identified by the witness as one of the men.

Police were called and the investigation revealed that the TV set had been removed from the house of Mr. Mauro who lived in the house across the alley from the witness Smith. A window had been broken in the back door of Mr. Mauro's house and a forceable entry had been made. The TV in question had been moved out the back door to the alley where it was recovered. A portable TV was still inside the house, but had been moved from its stand to the kitchen. No one was home at the Mauro house when the entry was made. Palm prints were lifted from the TV set found in the alley by an officer from the police laboratory and these prints were later testified to as matching the palm prints of both defendants. The defendants' prints were taken at police headquarters after their arrest for purposes of comparison.

On the same night of the offense, the investigating officers found the 1951 Plymouth automobile in question parked about half a block down the street from Mr. Mauro's house. The officers found a billfold in the front seat and another billfold in the glove compartment. One billfold contained the name and effects of defendant John Sandy Chavez and the other contained the effects of a third party, Edward Chavez. Four officers then

went to 4229 Shoshone, which is about a mile or a mile and one-half from the Mauro house. The address designated as 4229 Shoshone was known to the police to be the residence of Edward Chavez. The house was dark when approached by the police and several minutes transpired after knocking before any sound was heard from within. Edward Chavez, partially dressed, came to the kitchen door and the two officers at that door identified themselves as police officers and asked if they could come in. It was apparent one of the officers knew Edward Chavez and Edward Chavez knew him from some past relationship. Edward Chavez said they could come in and opened the door. The officers went into the house and asked that the lights be turned on, which was done. The front door was then opened and the other two officers were allowed to enter. The two defendants were found sitting in the dark in the front room fully dressed. There were two women in the house and two small children, who had already prepared for bed. The officers advised the three men that they were under arrest for investigation of burglary. The three were handcuffed and taken to police headquarters at about 11:00 P.M.

The police had no search warrant for the automobile and did not have a warrant for the arrest of the three men which included the two defendants; and moreover, they did not have a search warrant for the residence of Edward Chavez. The defendants were advised of their rights and interrogated, but gave no information and signed no statements. They were finger and palm printed at the police station.

Trial was started on January 14, 1966, and concluded on January 18, 1966. The defendants were represented by counsel throughout the preliminary proceedings and also at the trial. The defendants did not testify at the trial and no evidence was presented by them. The sole question for our determination on this writ of error is

the sufficiency of the People's evidence to prove the charges beyond a reasonable doubt.

The jury apparently was not convinced beyond a reasonable doubt that the two defendants were guilty of the burglary; they did, however, find them guilty of the other three counts, namely, counts two, three and four.

The defendants allege six errors on review which will be discussed in the order presented.

■ First: The defendants argue that the evidence was insufficient to support the conviction of larceny since what happened could be no more than attempted larceny. The defendants contend that the TV set, though moved out of the house, was left standing at the owner's back property line and in their opinion within his lot line and not in the alley. We find no merit to this argument. There was direct evidence that an eye witness saw the TV set in the hands of at least two men who were attempting to load it into the trunk of their car which was parked in the alley. The fact, if it be true, that they set it back down on the owner's property and not in the alley does not lessen the offense. There certainly was sufficient evidence to support the jury's verdict. The fact that the defendants were not able to carry away the TV set because it wouldn't fit into the trunk and because they were frightened off at the second approach by the neighbor does not mean that a crime of larceny had not been completed. The evidence reveals that the defendants did have complete control of the TV set, even if only for a few minutes, and did have it in their possession on and off the premises of the owner without his consent.

■ Second: The defendants argue that the trial court erred in failing to grant their motion for judgment of acquittal since they were found guilty of conspiracy to commit burglary, larceny and conspiracy to commit larceny upon the same evidence which the jury rejected in finding them not guilty of burglary. The defendants

base their argument entirely on *Robles v. People,* 160 Colo. 297, 417 P.2d 232. A careful reading of this case will reveal that it does not establish as a matter of law that a defendant cannot be found guilty of conspiracy to commit burglary, larceny and conspiracy to commit larceny when the jury has found the defendant not guilty of burglary. That case was decided on its own facts; they are in no way similar to the facts of this case. In *Robles,* the court stated: "The very same evidence which the jury apparently did not believe was sufficient to prove the defendant participated in the robbery was the *only* evidence which could prove him guilty of conspiracy."

In this case the evidence is not so limited. There was physical evidence of a breaking and entering; there was an eye witness to the larceny of the TV set; the same witness overheard the conspiracy statement to go get a truck because the trunk of the car would not be adequate to hold the TV set. Furthermore, the palm prints of the defendants were found on the TV set; the defendants were apprehended together that same night fully dressed and awake in a completely darkened house; and there was direct and independent evidence of larceny and conspiracy to commit larceny. The evidence of burglary and conspiracy to commit burglary was circumstantial except for the physical evidence of the forceful entry and the fact that the TV set had been moved out of the house. Apparently in this case the jury was not convinced beyond a reasonable doubt that either of the defendants had entered the house because there was no direct evidence placing either in the house, and also because there was evidence of a third person involved who was never identified or made a part of this case. Yet, there was circumstantial evidence from which the jury could have determined beyond a reasonable doubt that there was a conspiracy to commit the burglary and that the two defendants were involved in that conspiracy. To hold otherwise would require

the court to instruct the jury to ignore the circumstantial evidence and raise the conjecture that these two defendants just happened to drive down this alley that night and find a $635 Color TV Console Set standing in the alley just after someone else unknown to them had broken into the house and moved the set to its location behind the garage adjoining the alley. Actually, the verdicts in this case are not inconsistent within the ruling of the *Robles* case because of the additional evidence and circumstances involved. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399, reviews the subject of so-called inconsistent verdicts. In that case it was determined that *Robles* was not applicable because of a different set of circumstances and that a conviction on a larceny charge was not inconsistent with the jury's verdict of not guilty on the charge of burglary.

Third: The defendants argue that the trial court erred in failing to grant a mistrial when it was established that both defendants, in handcuffs, had been taken past the jurors after a request had been made that the handcuffs be removed. Defendants rest their argument primarily on *Montoya v. People,* 141 Colo. 9, 345 P.2d 1062, and *Eaddy v. People,* 115 Colo. 488, 174 P.2d 717. These cases deal with the problem of bringing the defendant into the courtroom before the whole jury or jury panel while in handcuffs. It was there held that it was reversible error only if it was shown to be unnecessary and prejudicial to the defendant. The facts in the instant case are essentially different. The defendants were not brought into the courtroom at any time in handcuffs. The incident in question occurred at a time when all of the jurors were supposed to have been in the jury room and had been accounted for at 10:00 A.M. The deputy sheriff, in order to safely transport the defendants from the holding room in the court building to the room adjoining the trial courtroom, waited until 10:15 A.M. and then moved the two defendants, handcuffed, down the hall. Two of the jurors

for some inexplicable reason left the jury room and were standing in the hall and probably observed the two defendants as they walked by. It was apparent that reasonable effort had been made by the court and the sheriff's office to avoid the incident which did occur. There was no showing that any prejudice did in fact occur. When the incident was called to the trial judge's attention, he ordered the deputy sheriff to bring the defendants down the hall to the courtroom one at a time without handcuffs. This change of procedure in moving the defendants one at a time down the hall without handcuffs was not an admission or recognition, as defendants claim, that a prejudicial error had occurred or that handcuffing was not necessary. More than one defendant has escaped from a courthouse in Colorado where the defendant was being moved from the holding room of the building to the courtroom door without handcuffs. Anytime a defendant is moved from room to room in a public building there is some element of risk to the public in the event of an attempted escape which must be balanced with the rights of the defendant to be brought before the court without handcuffs unless there is some great necessity to do otherwise. In this case it appears that reasonable and precautionary measures were taken both for the defendants as well as the public. We find no prejudicial or reversible error in this incident.

Fourth: The defendants argue that the trial court erred in admitting into evidence Exhibits "A" and "B", the billfolds, which they claim were obtained as a result of an illegal search without a warrant and without probable cause. Under the facts and circumstances of this case, we do not agree with this argument.

■ *People v. Hernandez,* 153 Colo. 316, 385 P.2d 996, and *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1984, 6 L.Ed.2d 1081, do not preclude any search of an automobile at any time without a warrant. Also see *Stewart v. People,* 162 Colo. 117, 426 P.2d 545. In that case, the problem

involved the search of an unoccupied car at a time and place remote from the arrest. At the time of the search, the automobile was in the valid custody of the police and the search was made for the fruits of the crime, for instruments of the crime, or for evidence relating to the crime for which the accused was validly arrested. Under these conditions, we held the search to be reasonable and not violative of any of the constitutional rights of the accused, which holding is in consonance with *Cooper v. State of California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. Although the facts and conditions under which the search of the automobile was made in *Stewart*, *supra*, are dissimilar from the conditions existing when the police examined the interior of the unoccupied automobile here, nevertheless, it is authority for the rule that under certain conditions and circumstances in automobile searches, the search will not be held to be violative of any constitutional right and is reasonable under certain special conditions.

In the case before us, the investigating officers found the automobile at a location approximately one-half block from the scene of the crime and within a few minutes after they arrived to investigate the crime. The automobile was similar in description to the car seen by an eye witness during the incident in the alley. The automobile was unoccupied and the officers did nothing more than to check it out for identification of the owner and in the process found the two billfolds in question. This was not a general exploratory search. Under these special facts, this search can be classified as reasonable and is not in violation of any constitutional rights of the defendants.

Fifth: The defendants argue that the trial court erred in admitting into evidence People's Exhibits "F", "G" and "I" through "P", which constituted palm print evidence. The defendants claim the People's expert witness did not qualify as a palm print expert and the comparative prints used were not sufficiently shown to

be identical. The record shows considerable examination and cross-examination of the witness regarding his qualifications. It is a matter within the discretion of the trial judge to determine if the witness is to be allowed to testify as an expert on a subject, and that determination will not be disturbed by this court on review where there is no showing of abuse of discretion. *We have found no such abuse of discretion in this case.* The weight to be accorded opinion evidence given by experts is a question solely for the jury. Such testimony is subject to the test of cross-examination as any other testimony. Jurors are not bound by the testimony of the expert and are not obligated to accept it. *Moseley v. Lamirato,* 149 Colo. 440, 370 P.2d 450; *Rosenthal v. Bank,* 129 Colo. 35, 266 P.2d 767.

The exhibits were properly admitted and the weight to be accorded the exhibits and the testimony of the expert was solely a question for the jury.

Sixth: The defendants argue that their motion to suppress and their motion for judgment of acquittal should have been granted as to all counts since the palm prints were the only evidence connecting these defendants to these offenses and the palm prints of defendants were obtained as a result of illegal arrest. The defendants' argument is based on their own conclusion that there was an illegal arrest involved in this case. A valid arrest must be based upon probable cause. Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious man to believe that an offense has been or is being committed by the person arrested. *Gallegos v. People,* 157 Colo. 173, 401 P.2d 613. See also, *Altobella v. People,* 161 Colo. 177, 420 P.2d 832. A thorough study of all the testimony and evidence shows there was sufficient probable cause to justify the arrests made without a warrant having first been obtained. The officers had personal knowledge of the crime and the

circumstances developed in their investigation were sufficiently strong to warrant their action.

The judgments are affirmed.

MR. JUSTICE KELLEY not participating.