No. 23399.

JOHN C. MCLEAN *v.* THE PEOPLE OF THE STATE OF COLORADO.
(473 P.2d 715)

Decided August 10, 1970.

340

Morgan Smith, Public Defender, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, James F. Pamp, Assistant, Aurel M. Kelly, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Pringle.

John C. McLean, the defendant, was charged with simple robbery and convicted by a jury. He alleges as error (1) the failure of the court to rule that the in-court identification of him by the victim of the robbery was tainted by an unduly suggestive photographic identification, and the court's refusal to grant him a hearing outside the presence of the jury to determine whether his identification by two other witnesses was similarly tainted, (2) the refusal of the court to give a cautionary instruction on the general unreliability of eyewitness testimony, (3) the court's denial of his motions for a

mistrial, and (4) the giving of an instruction over his objection on the defendant's right to remain silent. We find no error in the trial court, and we affirm the judgment.

I.

At the beginning of the trial, the defendant moved for a hearing outside the presence of the jury to determine whether the identification of the defendant by certain witnesses for the People would be tainted by a photographic identification conducted by police officers prior to trial allegedly in violation of the defendant's right to due process of law. A hearing was held as to the identification of the defendant by Bernstein, the victim of the robbery and the only eyewitness to the actual crime.

It developed during the hearing that during the course of their investigation and before any arrest had been made, police officers had shown Bernstein a number of pictures with the hope of coming up with a suspect. Among the pictures shown to him was a picture of the defendant containing in the lower right hand corner the words "Colorado State Penitentiary" followed by a general description of the defendant. Bernstein was able to identify the man in the photograph as being his assailant.

The defendant argued before the trial court and argues here that the "mug shot" of the defendant shown to Bernstein singled him out for suspicion by identifying him as a criminal and was, therefore, so unduly suggestive as to create a substantial likelihood of irreparable misidentification at the trial. He argues that the district attorney failed to prove by clear and convincing evidence that an in-court identification of the defendant by Bernstein would not be tainted by the improper photographic identification. At the close of the hearing the trial judge denied the defendant's motion as to Bernstein while reserving his decision on other witnesses.

■ Although this case was tried after the decision of the Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the rule in that case

giving the accused the right to be represented by counsel during a lineup identification is clearly inapplicable to the present case since the defendant was not a suspect at the time his picture was shown to Bernstein.

 Instead of relying on the right to counsel embodied in *Wade, supra,* the defendant relies on his right to due process of law as set forth in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. This court pointed out in *Neighbors v. People,* 171 Colo. 349, 467 P.2d 804, that the basic concern of the court under the test of due process found in *Stovall, supra,* is whether the procedure followed in conducting the identification may have, under all circumstances of the case, resulted in a misidentification of the defendant at trial.

 While misidentification at trial is the primary concern of the court when applying the due process test of *Stovall, supra,* the Supreme Court has given weight to the expediency and necessity of the identification procedure. Thus in *Stovall* itself a one to one confrontation between the victim and the defendant was upheld under the test of due process as being the only feasible procedure for the police to follow under the circumstances. In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247, the court upheld a photographic identification in which snapshots of the suspects were shown to the witnesses partly on the basis that a serious crime had been committed, and it was essential for police officers to know if their investigation was on the right track.

 There are compelling reasons for allowing the police to conduct photographic identifications. As the Supreme Court stated in *Simmons, supra:*

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs.

* * *" 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253. The court went on to hold that a conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

▪ In the present case, a robbery had occurred. The police did not have a suspect, so pictures in the police files were shown to witnesses. There is nothing impermissible about that police practice. While the words "Colorado State Penitentiary" appearing on the photograph indicate that the defendant has a criminal record, the same inference is carried by any picture contained in police files. The argument of the defendant, taken to its logical extreme, would preclude the use by police of any photographs in their files and would effectively eliminate photographic identification as a means of discovering a suspect. We will not thus thwart an effective and permissible police investigative procedure.

▪▪ The defendant argues that he is in a peculiar and difficult position in this case because, at the trial, he could not bring the attention of the jury to the suggestiveness of the photographic identification on cross-examination without disclosing his prior criminal record. But we have never held that a police procedure is constitutionally impermissible solely because it places a defendant in a position in which he must make a hard choice at trial in defending the charge against him. Under the circumstances of this case, there was very little that the officers could do to more carefully protect the rights of a particular individual. At the state of investigation in question here, the need for a rapid identification of the robber outweighed any suggestiveness inherent in police file photographs.

Two other witnesses, Cy Lenig and Dale Zimmerman, testified for the People and identified the defendant as

being a customer in Bernstein's bar on the night of the robbery. The defendant requested a hearing outside the presence of the jury to determine whether they had participated in a photographic identification similar to that made by Bernstein. The trial judge denied the request on the basis that the witnesses were not eye-witnesses to the crime itself, but were merely collaborating witnesses to times prior to the commission of the crime.

The trial judge was in error in making a distinction between eyewitnesses to the actual crime and eyewitnesses to events placing the defendant in the victim's bar on the night of the crime. While it is true that in *Stovall v. Denno, supra,* and *Simmons v. United States, supra,* the Supreme Court was dealing with identification procedures involving eyewitnesses to the actual crimes, it is clear that the court, in dealing with the due process question, is concerned with the prospect of a conviction based on a mistaken identification of the defendant.

Convictions need not be based on the testimony of eyewitnesses to the actual crime. A prima facie case of robbery may be made against a defendant on the basis of circumstantial evidence placing him in the vicinity of the crime. See *Mathis v. People,* 167 Colo. 504, 448 P.2d 633. The jury is permitted to draw reasonable inferences of guilt from the circumstances shown by the evidence.

There is no valid basis for distinguishing between eyewitnesses to the crime itself and eyewitnesses to the circumstances from which the jury may reasonably infer that the defendant committed the crime. In either case, the possibility exists that a misidentification by the witnesses may result in a wrongful conviction. Here, the testimony of Lenig and Zimmerman placing the defendant in Bernstein's bar on the evening in question was an integral part of the prima facie case made out by the People. The jury was justified in drawing inferences of guilt from the identification. The demands of due process

apply to their identifications of the defendant with the same force as they do to the identification by Bernstein.

Although the judge was in error in the reason for his denial of the defense motion, we hold that the error did not result in such prejudice to the defendant as to require reversal here. The defendant makes it clear in his brief that

"[t]hese 'photographic show-ups' conducted with a photograph that indicated the defendant's physical characteristics plus his prior penitentiary record and at a time prior to arrest, incarceration and the appointment of counsel *are the lineups that are now and consistently have been at issue in this case.*" [Emphasis supplied].

We have held that the procedure followed by the police officers of showing "mug shots" to the witnesses in order to come up with a suspect was not unduly suggestive, and could not, therefore, have constituted a denial of due process of law to the defendant. On the basis of this holding, it is clear that no prejudice resulted to the defendant from the denial of his motion. As we have pointed out, if the police practice in question is a constitutionally permissible one, the fact that it influences the identification does not constitute a violation of due process at the trial.

II.

The defendant tendered three instructions in support of his theory of the case on the general unreliability of eyewitness testimony. He alleges as error the failure of the trial judge to give any of these instructions, correcting them in form or substance if necessary.

The refusal of the judge to give defendant's instructions is in line with our decision in *Land v. People*, 171 Colo. 114, 465 P.2d 124, in which we held that an instruction to the effect that children are more susceptible to suggestion than adults was properly refused when the judge had given a general instruction on the credibility of witnesses. Here the tendered instructions dealt with the credibility of eyewitnesses. A general instruction on the

credibility of witnesses was given by the trial judge. Under these circumstances, we do not find that the trial judge abused his discretion by deciding not to give the tendered cautionary instructions.

### III.

The defendant made two motions for mistrial, both of which were denied by the trial judge. The first motion was made before any testimony was taken when it was brought to the attention of the court that two jurors had seen the defendant in the hallway when he was handcuffed. The motion was renewed just before the verdict of the jury was received because of an alleged show of force by sheriff's officers in the courtroom during the course of the trial.

The first motion for mistrial falls under the decision of this court in *Scott v. People,* 166 Colo. 432, 444 P.2d 388. The appearance of the defendant before the jury in handcuffs is reversible error only when the exposure was unnecessary and prejudicial to the defendant. *Montoya v. People,* 141 Colo. 9, 345 P.2d 1062. In *Scott, supra,* we held that it was not unreasonable or unnecessary for a defendant to be handcuffed when being moved to and from the courtroom.

In the present case the record does not indicate that the defendant was ever brought into open court before the entire panel of jurors while wearing handcuffs. The practice of handcuffing a defendant on his way to and from the courtroom is, as we have held, a proper precautionary measure. It appears that the sheriff was making a reasonable effort to avoid exposing the handcuffed defendant to the jurors, and, consequently, we find no reversible error in the order denying the motion for a mistrial.

The trial judge inquired extensively into the alleged display of force by personnel from the sheriff's office. It appears that at one time during the trial, girls from the office wearing blue coats were seated in the spectators' section of the courtroom. Plainclothesmen

were present during the trial, but were identifiable as police officers only by those who knew them personally. These circumstances were not so unnecessarily suggestive of defendant's criminal character that we can say the trial judge abused his discretion by refusing to grant a new trial.

IV.

 The trial judge gave the following instruction to the jury over the objection of the defendant.

"You are instructed that, while the statute of this state provides that a person charged with crime may testify in his own behalf, he is under no obligation to do so; and the statute expressly provides that his neglect or refusal to testify shall not create any presumption against him. And in this case, the failure of the Defendant to testify should not be taken or considered by you as any evidence of his guilt or innocence."

The defendant argues that the instruction given by the court amounts to comment by the court on the defendant's exercise of his Fifth Amendment right to remain silent as forbidden by the Supreme Court in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106. We have recently held that the giving of the instruction in question, over defendant's objection, does not constitute reversible error. *Kimmel v. People*, 172 Colo. 333, 473 P.2d 167.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE GROVES concur.