THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARVIS LOFTON, Defendant-Appellant.

Third District    No. 76-188

Opinion filed January 28, 1977.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the defendant, Arvis Lofton, from convictions after trial by jury on one count of aggravated battery and two counts of unlawful use of weapons. The defendant was sentenced to concurrent terms of imprisonment of not less than one nor more than three years on the charge of aggravated battery and 364 days on each of the unlawful use of weapons charges.

The defendant's convictions and the sentences imposed thereon resulted from his alleged shooting of Martina Walker, a doorman at a place of business known as the Harlem Inn Tavern located in Kankakee. The defendant and Walker became embroiled in an argument over the payment of a cover charge which was a prerequisite to admission in the tavern. A shooting occurred and Walker was wounded. The defendant denied shooting the victim Walker or ever having a gun in his possession and no such weapon was ever found.

During the course of the defendant's trial he testified in his own behalf

and over a defense objection was cross-examined extensively concerning a dermal nitrate test which had been administered to him after his arrest. It was clearly established by the cross-examination of the defendant that such a test was in fact administered.

The State presented the testimony of an Officer Freigo, a firearms expert, who stated that in his opinion that from examining the powder burns on the victim Walker's shirt the victim was shot at close range. After objections by counsel for the defendant the court refused to permit the officer to testify as to the results of the dermal nitrate test performed on the defendant.

In this appeal we are presented several issues for review, but we deem the paramount one to be whether or not it was error for the prosecutor to cross-examine the defendant regarding a dermal nitrate test, the results of which were subsequently excluded from the evidence.

The dermal nitrate test, also commonly referred to as the "paraffin test," is one of several tests utilized in an effort to determine the presence of gun powder residue on the hands and fingers of one who allegedly has fired a gun. The reliability of the test has been subject to serious question and has been refused admission as evidence in some jurisdictions. (See *Brooks v. People* (1959), 139 Colo. 388, 339 P.2d 933.) A 1971 article in the Illinois Bar Journal states:

> "The Dermal Nitrate Test is so prone to error that its admission into evidence would violate constitutional due process. * * *" (59 Ill. B.J. 919 (1971).)

We are cognizant of the fact that the results of the test performed on the defendant in the instant case were not received in evidence; however, the record reflects that there was lengthy and detailed testimony elicited from the defendant for the purpose of laying the groundwork for the introduction of the results and which clearly established that such a test had been given. Even though the jury was precluded from learning of the results of the test, was not the harm already a fait accompli? We believe so. The defendant was questioned as to whether he had showered after his arrest, whether he had washed his hands, used soap, fired any guns, set off any firecrackers, handled any fertilizer or had come in contact with any nitrates. While the term "dermal nitrate test" may well be a term of not common usage and a term not possessing the familiarity of meaning by our citizenry, such as does the term "polygraph test," it is nevertheless difficult to assume that all of the jurors hearing the defendant's case were so lacking in knowledge and sophistication as to be unaware of the purport and meaning of the questions posed to the defendant during his cross-examination by the State. Coupled with those questions which insinuated that the State desired the results of the test admitted in

evidence we have a situation where the results were denied admission only after counsel for the defendant voiced an objection.

We harbor grave doubts as to the wisdom of permitting the results of a dermal nitrate test to be admitted in evidence; however, we are not called upon to make a determination of that question in this appeal. We do, however, deem it reversible error to permit the elicitation of testimony from the defendant to the effect that he took such a test and then to exclude the results of the test from evidence as the result of defense counsel's objection. See *People v. York* (1975), 29 Ill. App. 3d 113, 329 N.E.2d 845, where testimony in prosecution for aggravated incest that the complaining witnesses had taken polygraph examinations implied that had the results been negative the case would not have been prosecuted and the admission of such testimony was held to be error. See also *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353, and *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.

Having concluded that reversible error was committed during the trial of the defendant it is unnecessary for us to consider the other issues raised for review by the defendant. For the reasons set forth the judgments of guilty and sentences imposed thereon upon the defendant are reversed and this case is remanded for a new trial.

Reversed and remanded.

ALLOY, P. J., and STENGEL, J., concur.