The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Ricky DILLON, Defendant-Appellant.

Nos. 78–1214, 79CA0136.

Colorado Court of Appeals,
Div. III.

Feb. 26, 1981.

Rehearing Denied Feb. 26, 1981 and
March 19, 1981.

Certiorari Granted July 13, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colo. State Public Defender, Harvey M. Palefsky, Deputy State Public Defender, Denver, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant appeals his conviction by a jury of felony menacing. We reverse.

The record contains various descriptions of the events in question. The complaining witness, Margaret Driscoll, testified that she and defendant arrived simultaneously at a Colorado Springs service station and stopped their automobiles facing each other about two feet apart; that as she left her car to purchase some cigarettes defendant yelled at her to move her car and called her a "white honky bitch"; that shortly after she reached the cigarette machine in the

station's office, defendant tapped her on the shoulder twice and, without again calling her a name, told her to move her car; and that after agreeing with this request she "called him a Nigger . . . because [she] was angry."

Driscoll also stated that after her use of the racial epithet, defendant hit her twice on the side of her face; that she then went to her car, got a metal pipe, began chasing the defendant, and attempted to strike him with the pipe. She testified that defendant subsequently obtained a handgun from a friend of his and pointed it at her; that each told the other to stop; and that as she walked toward her car defendant struck her with the gun. She also testified that while she was chasing defendant with the pipe and before defendant obtained a gun, a third party, one Decker, appeared and struck defendant, at which time defendant began chasing that person.

A witness to the incident testified that a third person slapped defendant on the back of the head at the time defendant slapped Driscoll, and that defendant immediately began chasing this third person. Decker testified that he owned the car Driscoll was driving; that when he arrived at the station defendant was standing over Driscoll's car; that Driscoll was inside the car and was "getting all kinds of radical"; that he told defendant to "lay off"; and that defendant then hit him. Decker said he saw no gun and that he did not see defendant strike Driscoll at any time.

At the conclusion of all the evidence, defendant, who was charged with menacing, second degree assault, and committing a crime of violence, requested a jury instruction on self-defense. In denying the request the trial court stated that although the evidence was "conflicting," such instruction was not "justified in the state of the evidence." The jury returned a guilty verdict on the menacing count, but failed to reach a verdict on the assault charge.

Defendant's trial counsel neglected to file a motion for new trial within 15 days of the verdict as required by Crim.P. 33(b). After the 15-day period had expired, another at-torney was appointed to represent defendant. Defendant's new counsel filed a motion for leave to file out of time a motion for new trial or judgment of acquittal notwithstanding the verdict. At a hearing on that motion, defendant testified that, based on his conversations with his trial attorney, he believed that his case was being appealed. The trial court denied the motion, and defendant appealed both his conviction and the trial court's denial of his motion. The two appeals have been consolidated.

The People argue that defendant's failure to file a timely new trial motion precludes our consideration of the merits of his appeal. We disagree.

■ The policy which favors deciding cases on the merits rather than on the basis of procedural default is particularly strong where, as here, a criminal defendant must rely on his defense counsel to preserve his right to appeal. *See People v. Moore*, 193 Colo. 81, 562 P.2d 749 (1977). In light of defendant's uncontroverted testimony that he believed his attorney was processing his appeal, we conclude that the trial court abused its discretion when it denied defendant's motion to file untimely motions and thereby perfect his appeal. *See* Crim.P. 45(b)(2); *People v. Sanchez*, 1 Cal.3d 496, 82 Cal.Rptr. 634, 462 P.2d 386 (1969).

Defendant argues that the trial court erroneously denied his request for a jury instruction on self-defense. We agree.

■ Although one who is an initial aggressor normally cannot invoke the right of self-defense, the legislature has determined that the use of physical force by an initial aggressor may be justifiable "if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force . . . ." § 18–1–704(3)(b), C.R.S. 1973 (1978 Repl. Vol. 8). Moreover, a defendant is entitled to a self-defense instruction if there is any evidence in the record to support the theory that he acted in self-defense. *See People v. Moya*, 182 Colo. 290, 512 P.2d 1155 (1973).

Here, the evidence was conflicting as to what events occurred and in what sequence they occurred, as the trial court found. While the jurors could have concluded that defendant was the initial aggressor, the testimony of Driscoll and of Decker also permits other conclusions—*e. g.*, that after an initial altercation had subsided completely, defendant acted in self-defense after having been struck by Decker and having been chased and threatened by Driscoll. In the context of the peculiar evidence adduced in this case, it cannot be concluded as a matter of law that defendant was not acting in self-defense when he requested his gun and pointed it at Driscoll. *See Vigil v. People*, 143 Colo. 328, 353 P.2d 82 (1960); *People v. Winn*, 540 P.2d 1114 (Colo.App.1975) (not selected for official publication). Hence, defendant was entitled to an instruction which would permit the jury to resolve the factual disputes bearing on the issue of self-defense. *See People v. Duran*, 40 Colo.App. 302, 577 P.2d 307 (1978).

On remand, should the evidence again so warrant, the trial court should instruct the jury as to the defense of self-defense as well as any applicable exceptions to that doctrine, pursuant to §§ 18–1–704(1) and 18–1–704(3), C.R.S.1973 (1978 Repl. Vol. 8).

In view of our conclusion that defendant was entitled to a self-defense instruction in this case, we do not reach his contention that the trial court erroneously denied his mistrial motion.

Judgment reversed and cause remanded for new trial.

SMITH, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting:

I do not agree with the conclusion reached by the majority opinion that defendant was entitled to an instruction on self-defense. My view is based on the language of the controlling statute, § 18–1–704(3), C.R.S.1973 (1978 Repl. Vol. 8), which provides that:

"[A] person is not justified in using physical force if:

(a) with intent to cause physical injury or death to another person *he provokes* the use of unlawful physical force by that other person; or

(b) he is the *initial aggressor* . . . ." (emphasis supplied)

Defendant started the verbal abuse by calling Driscoll a "white honky bitch." When Driscoll entered the service station, defendant followed her in. He tapped her on the shoulder, the first physical contact between the two, to which Driscoll responded with a racial slur. The second physical contact then occurred when he slapped her face. Because Driscoll's involvement occurred only thereafter, I would hold as a matter of law, that defendant was not entitled to an instruction on the right of self-defense because he was the initial aggressor under subparagraph (b) of the quoted statute. And, in any event, by tapping her shoulder and slapping her face he had *provoked* Driscoll's later responses under the meaning of subparagraph (a) above.

The majority reasons that a jury could have concluded the initial altercation had subsided and could have found there was a break in the action following which Driscoll assaulted defendant. To accept this reasoning would mean that in any assault in which the victim fights back, we must stop the action at some point beneficial to the accused and say that a jury could decide one incident had ended and a second was beginning—with a blow being struck by the victim. To me, this unduly extends the right of self-defense to situations where the statute precludes its use.

I would affirm this conviction.