The PEOPLE of the State of
Colorado, Petitioner,

v.

Ricky DILLON, Respondent.

No. 81SC132.

Supreme Court of Colorado,
En Banc.

Dec. 20, 1982.

Rehearing Denied Jan. 10, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for petitioner.

J. Gregory Walta, Colorado State Public Defender, Denver, Harvey M. Palefsky, Deputy State Public Defender, Grand Junction, for respondent.

ROVIRA, Justice.

On August 11, 1978, the defendant, Ricky Dillon, was convicted of felony menacing. The court of appeals reversed the conviction because of the failure of the trial court to instruct the jury on the theory of self-defense. *People v. Dillon*, 631 P.2d 1153 (Colo.App.1981). We granted certiorari and now reverse the judgment of the court of appeals.

### I.

At approximately 10:30 p.m. on December 22, 1975, Margaret Driscoll drove into a gas station in order to purchase a package of cigarettes. At the same time, the defendant pulled into the station from the opposite direction. Driscoll testified that as she walked into the office the defendant told her to move her car, calling her a "white honky bitch." Driscoll refused and went in to buy the cigarettes.

The defendant followed Driscoll into the office and twice tapped her on the shoulder, again telling her to move her car. Driscoll completed her purchase and agreed to move the car. She then called the defendant "a nigger" because she "was angry." In response, the defendant struck her in the face two times.

Driscoll then went to her car, got a pipe, and began chasing the defendant. Although the sequence of events is not clear, it appears that a friend of Driscoll, William Decker, appeared and hit the defendant. The defendant then chased Decker.

Upon returning from the chase, the defendant asked Gregory Price, a passenger in his vehicle, for his "piece," at which time he was given a handgun. The defendant confronted Driscoll with the gun and both agreed to cease further fighting. However, when Driscoll turned to walk back to her car, the defendant struck her on the head with the handgun.

Driscoll got into her car and sat behind the wheel dazed. The defendant continued to point the weapon at her, telling her to move. At this point, a friend of Driscoll who was a passenger in her vehicle, convinced Driscoll to leave the premises.

As a result of the altercation, the defendant was charged with felony menacing,[1] assault in the second degree,[2] and a crime of violence.[3]

Defendant was found guilty of felony menacing. The jury was unable to reach a verdict on the second-degree assault charge, and the court granted defense counsel's motion for mistrial on that count. Subsequently, the district attorney requested that the court enter a nolle prosequi order on the second-degree assault and crime of violence charges. The court granted the request and sentenced the defendant on the felony menacing charge to an indeterminate term of imprisonment not to exceed five years. This sentence was to run consecutively to a life-imprisonment sentence he had received in another case.

## II.

The jury returned the guilty verdict on August 11, 1978. No motion for a new trial was filed within the time frame established by Crim.P. 33(b). The court entered judgment and sentenced the defendant on September 8, 1978. Further, the court appointed a public defender for the purpose of appeal and allowed defendant's court-appointed trial counsel to withdraw. A timely notice of appeal was filed on October 6, 1978. *See* C.A.R. 4(b). The notice stated that the appeal would be based upon grounds set forth in defendant's motion for new trial.

Subsequently, the public defender, in prosecuting the appeal, realized that no new trial motion had been filed. On January 12, 1979, leave was requested to file a motion for new trial and a motion for judgment notwithstanding the verdict. The trial court denied the motions. On January 25, 1979, a notice of appeal was filed based upon the denial of leave to file the motion for new trial. This appeal was consolidated with the appeal challenging the defendant's conviction.

On appeal, the court of appeals reversed. *People v. Dillon, supra.* It ruled that "the trial court abused its discretion when it denied defendant's motion to file untimely motions and thereby perfect his appeal." *Id.* at 1154. Further, it ruled that the trial court erred in refusing to instruct the jury on self-defense.

The People challenge the court of appeals' decision on two grounds. They argue that the trial court properly denied defendant's motion for leave to file motions out of time and properly refused to instruct the jury on self-defense.

The defendant argued before the court of appeals that the trial court erred in refusing to declare a mistrial after two jurors may have seen him being taken down the hall of the courthouse in handcuffs. The court of appeals did not address this argument because it reversed the conviction on other grounds. Given our disposition of this case, however, we will address defendant's contention.

## III.

The People first argue that the trial court correctly denied the defendant's request to file motions out of time. We agree.

Crim.P. 33(b) provides in part:

1. Section 18–3–206, C.R.S.1973 (now in 1978 Repl.Vol. 8).

2. Section 18–3–203(1)(b), C.R.S.1973 (now in 1978 Repl.Vol. 8).

3. Section 16–11–309, C.R.S.1973 (now in 1978 Repl.Vol. 8).

"A motion for a new trial other than on the ground of newly discovered evidence shall be filed within fifteen days after verdict or finding of guilt or within such additional time as the court may fix during the fifteen-day period."

The language of the rule clearly specifies that the trial court may only extend the time for filing "during the fifteen-day period." In the present case the motion to allow the filing out of time was not presented until more than five months following the jury verdict and more than four months after the entry of judgment and sentencing in the case.

Defendant argues that relief from a failure to timely file any motion or to ask for an extension within the time prescribed for filing a motion may be afforded pursuant to Crim.P. 45(b). He further contends that the trial court erred in neglecting to apply the standards set out in Rule 45. Rule 45(b) provides:

"When an act is required or allowed to be performed at or within a specified time, the court for cause shown may at any time in its discretion:

. . . .

(2) Upon motion, permit the act to be done after expiration of the specified period if the failure to act on time was the result of excusable neglect."

■ In Colorado the filing requirements set forth in Rule 33 are thus tempered by Rule 45. *People v. Moore,* 193 Colo. 81, 562 P.2d 749 (1977). The trial court may allow the filing of a motion for a new trial outside of the time limits provided in Crim.P. 33(b). Nevertheless, the burden of showing excusable neglect is upon the defendant; further, the granting of the relief is within the sound discretion of the trial court. *People v. Moore, supra.*

■ There is always, of course, the requirement that the court have jurisdiction to act. It is axiomatic that any action taken by a court when it lacked jurisdiction is a nullity. *McLeod v. Provident Mutual Life Insurance Co.,* 186 Colo. 234, 526 P.2d 1318 (1974). We are thus faced with the question of whether the trial court was divested of jurisdiction once the notice of appeal had been filed, leaving the trial court powerless to grant the motion for new trial. We believe that the trial court had no power to grant the motion for a new trial. *See William F. Larrick, Inc. v. Burt Chevrolet, Inc.,* 147 Colo. 133, 362 P.2d 1030 (1961); *Brooke v. People,* 139 Colo. 388, 339 P.2d 993 (1959). *See also People v. Jones,* 631 P.2d 1132 (Colo.1981); *Kurtz v. People,* 177 Colo. 306, 494 P.2d 97 (1972).

■ In *Brooke v. People, supra,* we held that where an appeal was pending before us, "jurisdiction of the case was vested entirely in this court, and the trial court had been divested of all jurisdiction in the cause other than to prepare and certify the record to this court in accordance with the applicable statute." 139 Colo. at 394, 339 P.2d at 996. We believe this reasoning equally applicable to the case at hand. The efficient administration of justice would not be served by a rule that permitted the trial court to reconsider its earlier rulings at the same time that an appeal is pending in an appellate court. Unless otherwise specifically authorized by statute or rule, once an appeal has been perfected, the trial court has no jurisdiction to issue further orders in the case relative to the order or judgment appealed from.[4] Consequently, should it be necessary for the trial court to act, other than in aid of the appeal or pursuant to specific statutory authorization, the proper course would be for a party to obtain a limited remand from the appellate court. *See People v. District Court,* 638 P.2d 65 (Colo.1981).

In light of the foregoing, we do not believe the trial court abused its discretion in failing to grant a motion for new trial, because in our view, it had no discretion to exercise. As a result, our review of defendant's contentions on appeal is under the

---

4. *Cf. People v. Small,* 631 P.2d 148 (Colo.1981), (where trial court severed speedy trial issue from new trial motion to allow defense counsel to testify about it, trial court had jurisdiction to consider speedy trial issue under Crim.P. 35 even though appeal was pending).

"plain error" standard. Crim.P. 33(a), 52(b).

## IV.

■ We must now consider whether the trial court's refusal to give the defendant's requested self-defense instruction was plain error. That is, we must decide whether it was a grave error that seriously affected the substantial rights of the accused. *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972). In order for us to find plain error, there must be a reasonable possibility that the alleged erroneous instructions contributed to the defendant's conviction. *People v. Aragon,* 186 Colo. 91, 525 P.2d 1134 (1974). The existence of this possibility must be determined by an examination of the particular facts of the case. *People v. Mills,* 192 Colo. 260, 557 P.2d 1192 (1976).

■ The general rule in Colorado is that an instruction embodying the defendant's theory of the case must be given if there is any evidence in the record to support it. *People v. Griego,* 183 Colo. 419, 517 P.2d 460 (1973); *People v. Moya,* 182 Colo. 290, 512 P.2d 1155 (1973); *People v. Montagne,* 181 Colo. 143, 508 P.2d 388 (1973). This is so, no matter how improbable or unreasonable defendant's theory is. For example, in *People v. Moya, supra,* the defendant was charged with attempted burglary and gave a highly implausible explanation on the witness stand of how he came to be at the scene. We held that because there was some evidence in the record (i.e., his testimony) to support the defendant's theory of the case, it was reversible error for the trial court to refuse to give the requested instruction.

In the case before us, however, there is not a scintilla of evidence in the record to support a self-defense instruction. Apparently, defendant's contention is that Driscoll's chasing him with the aluminum pipe before he pointed the gun at her or hit her with it would have justified his using physical force to defend himself pursuant to section 18–1–704, C.R.S.1973 (1978 Repl.Vol. 8), which recognizes a right of self-defense. Although section 18–1–704 negates the right of an "initial aggressor"

to use physical force in his defense, the defendant argues that the jury should have been given the self-defense instruction and been allowed to determine, as a matter of fact, the question of initial aggression.

We disagree with defendant's contention under the circumstances of this case. That defendant struck Driscoll first is uncontroverted by any evidence in the record. Moreover, all the testimony indicates that Driscoll was struck from behind as she was walking back to her car after Driscoll and Dillon agreed not to fight anymore, and then Dillon again pointed the gun at her when she was back in her car. Furthermore, the defendant's theory of the case, as it developed through the examination and cross-examination of witnesses and in closing arguments, was that the defendant had been misidentified and that it had in fact been Mr. Price, the passenger, who had brandished the weapon.

■ Were we to hold that a self-defense instruction should have been given on the facts of this case, such an instruction would be necessary in virtually every case where force or the threat of force is used. We decline to impose such a requirement. Consequently, we conclude that any error, if indeed there was error, was clearly not plain error.

## V.

Finally, we must address the defendant's contention that the trial court erred in refusing to grant a mistrial because of possible prejudice from the defendant's being escorted handcuffed down the hall of the courthouse past some jurors who were standing in the hall. We do not believe there was error.

The incident occurred on the morning of the second day of trial, as the defendant was being brought from the central holding cell to a holding cell near the courtroom. The defendant was dressed in civilian clothing and had his hands cuffed behind his back. As the defendant and a deputy sheriff were walking down the hall, two members of the jury walked out of the jury

room into the hall. The deputy testified *in camera* that his body was between the defendant and the two jurors and that he did not believe that the jurors could have seen the handcuffs. Defense counsel stated that he did not want the jurors to be questioned about what they had seen; he asked only for a mistrial.

We have often stated that "the presumption of innocence requires the garb of innocence" and that "every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require." *See, e.g., Eaddy v. People,* 115 Colo. 488, 492, 174 P.2d 717 (1946). Consequently, in *Eaddy* it was held improper to bring the defendant into court wearing coveralls with the words "County Jail" written in large letters across the back. Similarly, in the absence of necessity, a defendant should not be brought into court manacled. *Montoya v. People,* 141 Colo. 9, 345 P.2d 1062 (1959).

The mere fact of exposure of a handcuffed defendant is not necessarily sufficient to warrant the granting of a mistrial, however. For example, in *Scott v. People,* 166 Colo. 432, 444 P.2d 388 (1968), under circumstances quite similar to those in the case before us, we held that a probability of inadvertent exposure of handcuffed defendants to jury members in the hall of the court building was not reversible error. We stated:

> "More than one defendant has escaped from a courthouse in Colorado where the defendant was being moved from the holding room of the building to the courtroom door without handcuffs. Anytime a defendant is moved from room to room in a public building there is some element of risk to the public in the event of an attempted escape which must be balanced with the rights of the defendant to be brought before the court without handcuffs unless there is some great necessity to do otherwise."

166 Colo. at 441, 444 P.2d at 392–93.

Similarly, in *McLean v. People,* 172 Colo. 338, 473 P.2d 715 (1970), we held that inadvertent exposure of a handcuffed defendant to two jurors in the hallway was not a ground for reversal absent a showing that the exposure was unnecessary and prejudicial to the defendant. *See also People v. Cardwell,* 181 Colo. 421, 510 P.2d 317 (1973) (where there was no evidence that any jurors saw the defendant being transported in handcuffs and defendant did not request permission to question jurors, no reversible error); *Hamrick v. People,* 624 P.2d 1320 (Colo.1981).

█ In order for us to conclude that the incident in the case before us constituted reversible error, we would have to find that the exposure was both unnecessary and prejudicial. The trial court found that it was unexpected that the jurors would have been out in the hall at that time, that the sheriff had taken all reasonable precautions, and that there was no prejudice to the defendant. Considering the need for security, the fact that it was not demonstrated that the jurors had seen the defendant handcuffed, and the inadvertent nature of the exposure, we are not prepared to say that the trial court erred in denying the defendant's motion for a mistrial.

The judgment of the court of appeals is reversed.

QUINN, J., dissents, and DUBOFSKY, J., joins in the dissent.

QUINN, Justice, dissenting:

I dissent from Part III of the majority opinion which holds that the trial court lacked jurisdiction "to issue further orders in the case relative to the order or judgment appealed from." I would hold that the trial court, under the facts of this case, did have jurisdiction to consider the defendant's request to file a motion for a new trial out of time on the ground of excusable neglect. Because the trial court failed to determine whether the defendant's failure to file a timely new trial motion was due to excusable neglect, I would remand the case for this determination.

A brief examination of the facts is helpful to an understanding of the jurisdictional aspect of this case. The defendant was represented by a court appointed private attorney throughout the trial due to a conflict of interest on the part of the public defender's office. The jury verdict was returned on August 11, 1978. The record does not indicate whether the defendant was informed on this date of his right to appeal and of the necessity of filing a motion for a new trial within fifteen days in order to preserve his grounds for appeal. Nor does the record reveal whether an extension of time for filing the new trial motion was requested or granted. Rather, the next occurrence reflected in the record is the September 8, 1978, sentencing hearing, at which the defendant was advised by the judge as follows:

"I want to tell you you have a right to appeal and seek review of the sentence if you so desire. If you cannot afford an attorney, an attorney will be appointed for you. Because you have gone through with the court appointed attorney ... I assume and will make the assumption that you do want an attorney and one will be appointed.... I'll then appoint the Public Defender to represent you for purposes of appeal in this case, allow [appointed counsel] to withdraw....

"I want you to keep in mind that you have the same right to appeal that I have talked to you about and explained to you in this case as in the next case which I'll now call."

The court then appointed a public defender to represent the defendant on appeal. Nevertheless, it was the defendant's original court-appointed attorney who on October 6, 1978, filed the notice of appeal, which stated that the defendant "hereby gives notice of his intent to appeal this case on the grounds set forth in his Motion for New Trial."

On November 15, 1978, the district court entered an order extending to January 14, 1979, the time within which to transmit the record on appeal. On January 12, 1979, the defendant's new attorney filed a written request for leave to file out of time a new

trial motion. This written request stated that an earlier new trial motion was not filed because the defendant was not fully advised of the appealable issues in the case and also because the defendant's original attorney had told him that he and the prosecuting attorney believed the defendant would most likely receive a concurrent sentence. The request for leave to file an untimely motion for a new trial was accompanied by the motion for a new trial.

On January 15, 1979, a hearing was held on the defendant's written request to file out of time. The court denied the request, noting:

"At this time, the Court is ready to rule. There are two things that are important to the Court here. First is the fact that the Defendant was told of his right to appeal, and an attorney was appointed for that purpose. Under those circumstances the Court does not feel it has any right to supervise or work out a contract or relationship between a Defendant and his attorney. That is not the province of the Court.

"Secondly, this is not timely filed. If we don't have some procedural rule, we never have anything properly and finally determined.

"I'm satisfied from presiding at the trial and the notes of the case that this man did have a fair trial, and I'm not going to allow the motion to be filed. I'll deny the motion for an extension of time in which to file a motion for new trial."

The court of appeals received the record on appeal on January 16, 1979.

Crim.P. 33 provides that, unless the ground asserted is that of newly discovered evidence, a motion for a new trial "shall be filed within fifteen days after verdict or finding of guilt or within such additional time as the court may affix during the fifteen-day period." Crim.P. 45(b) authorizes the trial court to permit a motion for a new trial to be filed after the fifteen day period has elapsed, "if the failure to act on time was the result of excusable neglect." The majority holds that the trial court had

no jurisdiction to act under Crim.P. 45(b) in this case because the appeal had been "perfected." This reasoning assumes that the mere filing of a notice of appeal somehow constitutes "the perfection of an appeal." The real issue, as I see it, is not whether an appeal may or may not have been "perfected," but whether the mere filing of a notice of appeal in the trial court rendered that court powerless to consider the defendant's Rule 45(b) motion. I would hold that the trial court did have jurisdiction to act on the defendant's motion under the circumstances present here.

There can be no doubt that even where a notice of appeal has been filed the trial court retains jurisdiction over a case for limited purposes. The trial court, for example, is charged with supervising the compilation of the record on appeal and certifying the reporter's transcript, if any, to the appellate court. C.A.R. 10, 11 and 12. Where the appellant is not required to prepay a docket fee, as here, the case normally is not even docketed in the court of appeals until the record is filed. C.A.R. 12(a). Indeed, this case was not docketed until January 16, 1979, the day after the hearing on the defendant's request to file a belated motion for a new trial. In these circumstances, if the trial court had granted the defendant's motion and proceeded to consider the new trial motion which had already been filed, it would not have interrupted any proceedings in the court of appeals.

Although the majority recognizes that the trial court retained the power to act during this period "in aid of the appeal," it apparently attributes no significance to this concept except for purely mechanical actions.[1] Yet the whole purpose of requiring a new trial motion is "in aid of the appeal." Because a motion for a new trial forestalls the necessity of an appeal where the trial court agrees that error has been committed, the requirement for filing such a motion has been imposed as "a procedural prerequisite intended to assure that the matters appealed have been considered by the trial court." *People v. Moore*, 193 Colo. 81, 83, 562 P.2d 749, 751 (1977). Thus, while the filing of a motion for a new trial is a procedural prerequisite for appellate review, we have expressly held that the time limitation for a new trial motion "is not jurisdictional in the sense that without it the court would lack authority to adjudicate the subject matter."[2] *Id.* at 83, 562 P.2d at

1. I disagree with the majority's "exclusive jurisdiction" concept under which the power to act in relation to a case can only be exercised by an appellate court once the case has been docketed in that court. Our statutes and rules of criminal procedure recognize that even when an appeal is pending the trial court may properly rule on the case for limited purposes. Thus, motions for an appeal bond are directed to the trial court, Crim.P. 46(b); Crim.P. 46.-1(a)(2); C.A.R. 9(b). Similarly, section 18–1–410(1), C.R.S.1973 (1978 Repl.Vol. 8), and Crim.P. 35(c)(1) authorize the filing of some post-conviction motions even if an appeal is pending but judgment "has not yet then been affirmed on appeal." Nor does a trial court, by virtue of a pending appeal, lose jurisdiction to grant probation or modify sentence upon the receipt of a diagnostic center's recommended rehabilitation report pursuant to section 17–40–103, C.R.S.1973 (1978 Repl.Vol. 8). It would appear that a trial court also should be able to grant a timely motion to reconsider sentence under Crim.P. 35(b) in spite of a pending appeal. *See People v. District Court*, 638 P.2d 65 (Colo.1981) (Dubofsky, J., dissenting); *People v. Francis*, 630 P.2d 82, 84, n. 13 (Colo.

1981). Finally, where a motion for a new trial is based upon newly discovered evidence, the trial court has jurisdiction under Crim.P. 33 to consider the motion even though an appeal is pending. *See generally United States v. Fuentes-Lozano*, 580 F.2d 724 (5th Cir.1978); *United States v. Ellison*, 557 F.2d 128 (7th Cir. 1977), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977); *United States v. Frame*, 454 F.2d 1136 (9th Cir.1972), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed.2d 126 (1972).

2. The reason for the distinction between civil and criminal cases, with respect to time limitation, was expressed in *People v. Moore*, 193 Colo. 81, 83, 562 P.2d 749, 751 (1977), as follows:

"While in both situations there is a strong judicial preference for deciding cases on the merits rather than on the basis of time limitations, this consideration is more cogent in criminal cases. In a civil case, where a party's money or property is at risk, his attorney's failure to file a timely motion for a new trial may constitute professional negligence for which the client has a remedy in damages. In a criminal case, however, where the

751. Where, as here, the trial court's action would not only occur before the case is docketed with the court of appeals but might also render the appeal unnecessary, I see no reason for denying the trial court the power to consider, and in its discretion to grant, both the request for leave to file out of time and the motion for a new trial itself.

The record here clearly demonstrates that the trial court did not attempt to determine whether the defendant's failure to file a timely new trial motion was due to excusable neglect. Rather, the court based its ruling on two unrelated considerations. First, it found that "the Defendant was told of his right to appeal." Even though such an advisement might be relevant in making a determination of whether excusable neglect has been shown, the only such advisement contained in the record not only failed to advise the defendant of the necessity for filing a new trial motion and of the time limits involved, but occurred after the time for filing the new trial motion had already expired. The second basis for the court's decision was the defendant's failure to file the motion within the fifteen day time period, the court noting that "[i]f we don't have some procedural rule, we never have anything properly and finally determined." We do have the procedural rule contained in Crim.P. 45(b), however, and that rule allowed the court to consider the untimely motion if it determined that "the failure to act on time was the result of excusable neglect."

I would remand to the trial court for just such a determination. If the court should find that the defendant's failure to file a timely new trial motion was not due to excusable neglect, the court could then certify the case to this court for a determination of the errors asserted under the plain error rule employed by the majority in its opinion. If, however, the trial court should determine that excusable neglect was shown, it should then proceed to consider the motion for a new trial. If it should deny this motion, it could then certify the

client's life or liberty is at stake, there is no

case to this court for a determination of the errors asserted under the normal standard employed when issues are properly preserved for appeal. If the trial court, on the other hand, should grant the motion for a new trial, the issues raised here would be moot. This procedure, in my view, is consistent with the overriding purpose of our rules of criminal procedure: "to provide for the just determination of criminal proceedings." Crim.P. 2. A remand affords the defendant an opportunity to seek a judicial inquiry into the substantive merits of his claims rather than, as here, limiting him to the extremely rigid standard of plain error. Of equal importance, such a resolution avoids the grafting onto our rules of procedure a notion of jurisdictional exclusivity which I believe tends to elevate form over substance and to make procedure an end in itself.

I am authorized to say that Justice DUBOFSKY joins me in this dissent.

comparable, practical remedy."